(In Re Estate of Rody Thornton, Deceased.)

## MERRILL v. STATE ET AL.

### (No. 731.)

Wills—Nuncupative Will—Validity.

1. By the laws of this state a nuncupative will is not recognized as valid, and is not entitled to be admitted to probate.

[Decided June 30, 1913.]                    (133 Pac. 134.)

Error to the District Court, Uinta County, Hon. David H. Craig, Judge.

Proceeding brought in the District Court of Uinta County for the probate of an alleged nuncupative will of Rody Thornton, deceased. Objections were filed and a judgment was entered refusing to admit the instrument to probate, whereupon the petitioner brought error. The other material facts are stated in the opinion.

*A. B. Gough* and *Clark & Budge,* for plaintiff in error.

The right to dispose of one's property is not a constitutional right, but one depending entirely upon the sanction of the legislature, and subject to the restrictions which the law-making power may see fit to impose. (Page on Wills, Sec. 21.) Prior to the enactment of 32 Henry VIII, known as the statute of wills, such intsruments were not expressly recognized in England. That statute provided that lands might be devised by an instrument in writing, and thereafter oral wills of real estate were not approved except in certain localities in England, where by special custom such a practice was in vogue. At an early period, however, nuncupative wills of personal property were recognized; it not being considered that such testaments were affected by the statute of wills. (Page on Wills, p. 255.) Such verbal or oral wills were considered as valid as written wills. (30 Ency. Law, (2nd Ed.) 560). With the development of the law, and the growth of learning, nuncupations gradually fell into disfavor, and it came to be the practice that only such nuncupative wills as were made when the testator was *in ex-*

*tremis,* were held to be valid; they being justified only upon the plea of necessity. (30 Ency. Law, 2nd Ed., 560; Page on Wills, 255; Prince v. Hazelton, 20 Johnson, 502, 11 Am. Dec. 307.) And as to personalty, nuncupations made *in extremis* were commonly recognized by the courts in England, but upon the passage of the Statute of Frauds, it became necessary that the declaration of the testator should be made in the presence of three witnesses, and it was further necessary that such will should be made at the time of the testator's last sickness, and in the house of his or her habitation or dwelling, or where he or she had been resident for ten days or more next before the making of such will, except where such person was surprised or taken sick when away from home, and died before he returned to the place of his or her dwelling. Thus the law remained until the independence of this country. (Page on Wills, 255, 256.)

The meaning of Section 3588 of Wyoming Compiled Statutes is not quite clear. It seems to adopt the common law and declaratory and remedial acts or statutes in aid of such common law existing prior to the fourth year of James I, yet it may mean the common law of England as it now exists, and in addition thereto those declaratory and remedial acts passed prior to the fourth year of James I. But in either event it would seem that the statute of frauds, which was passed many years after the fourth year of James I, is not included in the terms of adoption, and that, therefore, the restrictions which the statute of frauds placed upon the execution of nuncupative wills, do not obtain in Wyoming, so that in this state the common law of England giving the unrestricted right to dispose of personal property by nuncupative will is now the law, unless it is modified or changed by some statute. Nuncupative wills are clearly recognized by the statutes of this state. (Comp. Stat. 1910, Secs. 5436-5438, 5410.) If the section of the statute (Sec. 5397, Comp. Stat. 1910) requiring that all wills to be valid must be in writing, witnessed by two competent witnesses,

and signed by the testator or some person in his presence
and by his express direction, is to be construed strictly
without regard to other sections of the code, the court might
hold a nuncupative will to be invalid; but such a decision
would abrogate the other sections which refer to nuncupa-
tive wills. The court will not lend itself to such a result
unless it is unavoidable, but will, if possible, harmonize the
seemingly inconsistent provisions that all may be effective.
(Humphries v. Davis, 100 Ind. 274; State v. Givens, 48
Fla. 165; Cahill v. State, (Ind.) 76 N. E. 182.) This rule
of statutory construction is universally accepted, making it
unnecessary to cite further authorities in its support. We
submit that Section 5397 has no application to nuncupative
wills. That section was enacted in 1882, and while it was
in force the legislature enacted what are now Sections 5410,
5437-5438, Comp. Stat. 1910. Why should the legislature
provide for admitting to probate nuncupative wills if it did
not intend that they should be considered as an exception
to the requirement of the then existing statute that all wills
must be in writing, &c.? These later provisions must be
considered as stating an exception to the earlier statute.
(Cincinnati v. Holmes, (Ohio) 46 N. E. 513; State v. Mc-
Gregor (Ohio), 10 N. E. 66; Carland v. Comm'rs., (Mont.)
6 Pac. 24; Ex-parte Turner, 24 S. C. 211.) The several
statutes on this subject should be harmonized and each con-
strued in connection with the other statutes on the same
subject. (36 Cyc, 1146, 1147; State v. Boswell, (Ind.) 4
N. E. 675; Minnich v. Packard, (Ind.) 85 N. E. 787.)
The facts as to the making of this nuncupative will are
such as to render it valid, if such a will is valid at all in this
state. (In re Megary's Est. 25 Pa. Super. Ct., 243; In re
Grossman's Est. 75 Ill. App. 224; Mellor v. Smyth, (Pa.)
69 Atl. 592; Baird v. Baird, (Kan.) 79 Pac. 163; In re
Miller's Est. (Wash.) 91 Pac. 967.)

The statutes relating to nuncupative wills do not limit
their operation to personal property, and while it may be
conceded that at common law such wills were not effectual

to dispose of real estate, it appears that the legislature of this state had no intention of thus restricting their effect. We contend, therefore, that as to the personal property of the deceased the nuncupative will is valid, both by virtue of the common law and by the statutes of this state, and that the will should also be held valid as to the real estate, since there is no statute prohibiting the devise of real estate in that manner, but on the contrary a general statute recognizing the validity of such a will.

*John R. Arnold* and *Baily D. Berry,* for defendant in error Arnold, as Administrator.

The alleged nuncupative will does not meet the legal requirements of the definition of such a will. (5 Words & Phrases, 4869; Ex parte Thompson, 4 Bradf. Sur. 154, 155; Shouler on Wills, 2nd Ed., Sec. 361.) One of the essential elements of such a will is that the testator shall declare the same to be his will and call upon a sufficient number of witnesses to witness the fact that he proposes to make his will, disposing of his property and naming his executor; not that he shall merely state in casual conversation that he would like to make a particular disposition of his property, nor that when prompted by the beneficiary to do so, he stated to him that he would leave him all his property. The reason for these restrictions is apparent, and on account of the opportunities for mistake and fraud the modern practice regards a nuncupative will with disfavor, and holds the propounders of such a will to the strictest requirement of the law for the establishment and probate of nuncupative wills. (30 Ency. Law, 2nd Ed., 566.)

The so-called nuncupative will of this decedent is not entitled to probate because there is no complete statute of this state outlining the method of probating such oral testamentary declarations. At no place in the statute is the number of witnesses specified. Even in the absence of Section 5397 it would be improper to probate any oral testamentary declarations, except the same be hedged about by such other restrictions and qualifications as are laid down

by the common law.  Again there is a direct conflict be-
tween the provisions of Section 5436 and Section 5397.
These statutes cannot be harmonized.  (26 Ency. Law, 2nd
Ed., 656; Hilburn v. Ry. Co., 23 Mont. 241.)  In most
states nuncupative wills are now invalid, and generally re-
garded with disfavor.  This fact was fully recognized by
this court by the case of Neer v. Cowhick, 4 Wyo. 49, 31
Pac. 862.  We believe it is admitted by practically all law
writers that real estate never passed under the provisions
of a nuncupative will.  (30 Ency. Law, 2nd Ed., 562.)

*John R. Arnold* and *C. P. Arnold,* for heirs at law of
decedent.

The fact that the sections of the statute which relate to
and control the execution of wills, viz.: Sections 5394 and
5397, and the sections relating to the probating of wills,
viz.: Sections 5410, 5436, 5437 and 5438, appear as of equal
dignity, force and effect in the compilation is misleading.
Prior to 1882 Wyoming had no statute covering the subject
of the execution of wills, other than the act of 1869 adopt-
ing the common law.  An act of 1882 provided for the man-
ner of executing wills.  Section 5494, Comp. Stat. 1910,
appears in that act, and also Section 5397, with the excep-
tion of a subsequent amendment thereto authorizing a will
to be typewritten as well as written.  No change was made
in the legislation upon either the subject matter of wills or
their probate until the act of 1890-91 establishing the pres-
ent probate code.  In this act are to be found the provisions
relating to the proving of nuncupative wills.  The present
probate code was a substantial adoption of the probate code
of California, but the legislature did not appropriate or
adopt the California statute creating the right to make nun-
cupative wills.  Had such further provision of the statute
of California been adopted prescribing the essentials for
making a nuncupative will there would have been harmony
in our legislation respecting the execution and the probating
of wills.  And the supposed will in question, lacking as it
does every element of a valid nuncupation, would have been

rejected for probate had it been offered. In 1892 the case of Neer v. Cowhick was decided by this court wherein it was held that an olographic will was not provided for by the statutes of this state, notwithstanding that the probate code declared that "an olographic will may be proved in the same manner as other private writings are proved." In 1895 a new act was passed upon the subject of the execution of wills, which was an amendment of the section of the Revised Statutes of 1887, prescribing the manner of executing a valid will. The law now stands as it stood with the passage of that act. All wills must be in writing and signed by the testator, and with the exception of an olographic will, which was excepted from the provisions of the act of 1895, all wills must be witnessed by two competent witnesses signing in the presence of the testator and by his express direction. The statutes thus brought into consideration, and which it is contended should be construed together as in *pari materia,* do not come within the rule which is invoked, for the reason that they do not cover the same subject nor have the same general purpose. They are inconsistent and are in conflict. Only statutes are in *pari materia* which are consistent, which can stand together, and which relate to the same subject, though enacted at different times. (Sutherland on Stat. Constr., Secs. 283, 284; Linton's Appeals, 104 Pa. St. 228; 4 Words & Phrases, 3478; Waterford v. People, 9 Barb. 161; 26 Ency. L., 2nd Ed., 622; Wheelock v. Myers, 64 Kan. 47, 67 Pac. 632; Salers v. Barber Asphalt Co., 160 Mo. 671, 66 S. W. 979.) Where two statutes in *pari materia,* originally enacted at different periods of time, are subsequently incorporated in a revision and re-enacted, the times when they first took effect will be ascertained and effect will be given to that which was the latest legislative declaration, if they are not harmonious. An existing statute is not to be considered as original because embodied in a revision, and therefore is not to be construed on the theory that none of its provisions had previously been in effect. (Suth. Stat. Constr., Sec.

161; Judd v. State, 62 S. W. 543, 25 Tex. Civ. App. 418; Braun v. State, 49 S. W. 620, 40 Tex. Cr. App. 236; Louisville v. Louisville P. W. Co., 53 S. W. 291, 107 Ky. 184; Inhabitants &c. v. Rockland, 89 Me. 43, 35 Atl. 1033; Cape Girardeau v. Riley, 52 Mo. 424, 14·Am. Rep. 427.)

Even under the facts and the authorities cited by plaintiff in error this proposed will must be rejected. The decedent asked no one to bear testimony that he was making a will. He called no witnesses. It was not a case of sudden death. An essential element recognized by the common law to the validity of a nuncupative will was that the testator should have called witnesses in a solemn manner to witness the nuncupation, and requested them expressly to bear witness to his act.

BEARD, JUSTICE.

The plaintiff in error, J. G. Merrill, filed a petition in the District Court of Uinta County, alleging in substance that one Rody Thornton died at Bennington, Idaho, on the 4th day of May, 1912, and that at the time of his death he was a resident of Uinta County, Wyoming; and that he left in said Uinta County an estate consisting of personal and real property. That the real estate left by the deceased was of the estimated value of $30,000, and the personal property of the value of about $40,000. That deceased left a nuncupative will in which the petitioner is named as the sole legatee; that deceased died without issue and was an unmarried man, and that there are no heirs resident in the State of Wyoming or elsewhere so far as petitioner knows. The writing alleged to be the nuncupative will of said deceased, and which the petitioner prayed might be admitted to probate as the last will and testament of said Rody Thornton, deceased, is in words and figures as follows, to-wit:

"In the matter of the nuncupative will of Roda Thornton, deceased. On the 4th day of May, 1912, at Bennington, in Bear Lake County, Idaho, Roda Thornton of Midway, Uinta County, Wyoming, being in the immediate ex-

pectation of death from hemorrhage of the lungs due to Pulmonary Tuberculosis, and being there and then informed by his attending Physician that he could live but a short time, and there and then not being physically able to make and execute a written will, in the presence of the undersigned subscribers, did declare his last will and wishes concerning the disposition of his property, in the following words, or substance thereof, viz.: 'I desire that J. G. Merrill of Bennington, Idaho, have all of my property and estate, and I give and will it all to him.' At the time the said Roda Thornton stated the foregoing as his will, he was of sound mind and memory, and not under any restraint, and he at that time desired us to bear witness that such was his wish, desire and will. Reduced to writing and sealed by us this 7th day of May, 1912."

(Signed)    "Dr. D. W. Poynter (S)"

"Samuel R. Hall."

(This instrument is referred to in the findings of the court as Exhibit 1.)

The Attorney General, on behalf of the State of Wyoming, filed objections to admitting said alleged will to probate on the grounds that said deceased left no heirs at law so far as known. That the instrument purporting to be a nuncupative will was no will at all. That the same was not made, attested and executed as required by the laws of Wyoming, in this: "that said instrument was not made in writing or typewritten; that said instrument was not witnessed by two competent witnesses; that said instrument was not signed by the deceased nor by a person in his presence, by his express direction."

Upon the trial the court found the facts to be, and stated its conclusions of law as follows:

"First: That Rody Thornton died at Bennington, Bear Lake County, Idaho, on the 4th day of May, A. D. 1912, and that at the time of his death he was a resident of Uinta County, Wyoming, and left in said county and state an estate consisting of real and personal property.

Second: That the said Rody Thornton left no heirs within the State of Wyoming, or elsewhere, so far as known.

Third: That a few hours before his death on the said 4th day of May, A. D. 1912, the said Rody Thornton called to his bedside one Samuel R. Hall and made the following declaration and statement to said Hall, and to Dr. D. W. Poynter, then and there present, to-wit:

'I desire that J. G. Merrill have all of my property, and I will it to him.' That at the time said statement and declaration was made, said Thornton was in imminent danger of death, and made said statement with the understanding that he could not live.

Fourth: That at the time said statement was made by said Thornton he was of sound and disposing mind.

Fifth: That the said declaration and statement of the said Rody Thornton so made to said Samuel R. Hall and Dr. D. W. Poynter, was thereafter within three (3) days after the death of the said decedent, to-wit: on the 7th day of May, A. D. 1912, reduced to writing and signed by the said Hall and Poynter, and is identified herein as petitioner's Exhibit No. 1, offered for probate as the nuncupative will of the said Rody Thornton, deceased.

Sixth: That the statement and declaration offered for probate, purporting to be the last will and testament of the said Rody Thornton, deceased, was not made in writing nor typewritten; that the said statement and declaration was not witnessed by two competent witnesses; that said statement and declaration so offered was not signed by the deceased, nor by a person in his presence, at his express direction, at or prior to the time of his death.

As a conclusion of law, from the foregoing facts, the Court finds that said instrument purporting to be the last will and testament of the said Rody Thornton, deceased, does not conform to Chapter 355, and particularly to Section 5397 of the Revised Statutes of Wyoming and is not such an instrument as complies with the requirements of said chapter and section aforesaid, and cannot be admitted

to probate, and the court therefore rejects and denies the application and petition of said J. G. Merrill, filed herein for the probate of said will."

From the judgment of the court refusing to admit to probate the instrument presented as the nuncupative will of said Rody Thornton, deceased, the proponant brings error.

It appears from the record filed in this court that after the decision of the District Court refusing to admit to probate said instrument as the will of said Rody Thornton, deceased, certain persons claiming to be heirs at law of said deceased appeared and petitioned the court for the removal .of James W. Chrisman, who had been appointed as administrator of said estate, and for the appointment of John R. Arnold as such administrator; and that such proceedings were had that said Chrisman was removed and said Arnold appointed as such administrator. That he duly qualified, and on motion in this court it was ordered that he be substituted as defendant in error in this action in the place of. said Chrisman.

It is conceded by counsel for plaintiff in error that the right to dispose of one's property by will "is not a constitutional right, but one depending entirely upon the sanction of the legislature, and subject to the restrictions which the law making power may see fit to impose." It is contended, however, that by Ch. 26, Comp. Laws 1876, now Section 3588, Comp. Stat. 1910, the common law of England, which recognized nuncupative wills as valid as to personal property, was adopted by that section of our statutes and that such wills are valid in this state at least to that extent. The section reads as follows: "The common law of England as modified by judicial decisions, so far as the same is of a general nature and not inapplicable, and all declaratory or remedial acts or statutes made in aid of or to supply the defects of the common law prior to the fourth year of James the First, (excepting the second section of the sixth chapter of forty-third Elizabeth, the eighth chapter of thirteenth Elizabeth, and ninth chapter of thirty-seventh Henry Eighth) and

which are of a general nature, and not local to England, shall be the rule of decision in this territory when not inconsistent with the laws thereof, and shall be considered as of full force, until repealed by legislative authority." For the purposes of this case it may be conceded that if there is no statute of this state inconsistent with the common law as adopted by the above quoted section, then a nuncupative will is valid in this state for all the purposes that it would have been valid at common law. But by an act approved February 8, 1882, entitled, "An act to provide the manner in which wills shall be executed in the Territory of Wyoming and for other purposes," it was provided: "All wills to be valid must be in writing, witnessed by two competent witnesses, and signed by the testator or by some person in his presence and by his express direction," etc. (Sec. 4, Ch. 107, S. L. 1882.) Since the passage of that act it cannot be reasonably maintained that the common law with respect to nuncupative wills is still in force in this state, unless that statute has been modified or repealed by subsequent legislation. It declares in no uncertain terms that *all* wills *must* be in writing and *signed* by the *testator* or by some person in his presence and by his express direction. No statute of the territory or state mentioned a nuncupative will prior to the act of 1891; and it is upon that act that counsel for plaintiff in error chiefly rely. That act was approved January 10, 1891, and is entitled, "An act providing for probate jurisdiction and procedure, and prescribing the duties of courts and the officers in connection therewith." That act relates solely and exclusively to probate procedure. It provides how wills shall be proved; but not one word can be found in the entire chapter (covering seventy-five pages of the Session Laws) prescribing in any form the requisites of a will, who is competent to make a will, or what property may be devised or bequeathed thereby. There is nothing in the act which would enable the court to determine whether or not the instrument propounded for probate was in law a valid will; and recourse would neces-

sarily have to be had to the statute prescribing what persons are competent to make a will and the formalities necessary to be employed in its execution; and these we find in a separate and distinct part of the statutes. The provisions of the act relied upon to sustain the contentions of plaintiff in error are found in Chapter 70, sub-Chapter 4, Secs. 5, 6 and 7, S. L. 1890-91, entitled as above, and are as follows: "Sec. 5. Nuncupative wills may, at any time within six months after the testamentary words are spoken by the decedent, be admitted to probate, on petition and notice, as provided herein for the probate of other wills. The petition, in addition to the jurisdictional facts, must allege that the testamentary words, or the substance thereof, were reduced to writing within thirty days after they were spoken, which writing must accompany the petition." "Sec. 6. The court, or judge thereof in vacation, must not receive or entertain a petition for the probate of a nuncupative will, until the lapse of ten days from the death of the testator, nor must such petition at any time be acted on until the testamentary words, or their substance, is reduced to writing and filed with the petition, nor until the surviving husband or wife (if any) and all other persons resident in the state or county interested in the estate, are notified as hereinbefore provided." "Sec. 7. Contests of the probate of nuncupative wills and appointments of executors and administrators of the estates devised thereby must be had, conducted and made as hereinbefore provided in cases of the probate of written wills."

These provisions, and in fact the entire chapter in which they appear, were taken almost literally from the Code of California, and seem to have been adopted by the Legislature without discovering that the laws of that state on the subject of wills provided for nuncupative wills as follows: "A nuncupative will is not required to be in writing, nor to be declared or attested with any formality."

"To make a nuncupative will valid, and to entitle it to be admitted to probate, the following requisites must be ob-

served:  1.  The estate bequeathed must not exceed in value the sum of one thousand dollars.  2.  It must be proved by two witnesses who were present at the making thereof, one of whom was asked by the testator, at the time, to bear witness that such was his will, or to that effect.  3.  The decedent must, at the time, have been in actual military service in the field, or doing duty on shipboard at sea, and in either case in actual contemplation, fear, or peril of death, or the decedent must have been, at the time, in expectation of immediate death from an injury received the same day." (Cal. Civ. Code, Secs. 1288 et seq.)  Such a will being provided for in the substantive law of that state, the rules of procedure for its proof have something to act upon; but not so here, where our statute contains no such provision.  In the case of Neer v. Cowhick, 4 Wyo. 49, 31 Pac. 862, 18 L. R. A. 588, the olographic will of Cowhick was offered for probate.  It was not witnessed; but it was contended by the proponant that by another provision of the chapter we are now considering, viz:  "An olographic will may be proved in the same manner as other private writings are proved," the will was valid although not witnessed.  The court said:  "This act repeals in express terms many provisions of the former law made obsolete under the constitutional provision conferring the powers and jurisdiction of probate courts under the territorial regime upon district courts.  The former statute relating to the competency of testators, the devises of lands, the passing of after acquired property by the will, and the provisions relating to the execution and attestation of such instruments were not repealed, although a number of sections relating to the proof of wills succeeding these sections of the Wills Act were repealed expressly.  There is no general repeal of inconsistent laws, and the intent of the Legislature is plain to preserve unimpaired Section 2237 of the Revised Statutes (now, as amended, Section 5397, Comp. Stat. 1910), requiring all wills to be in writing, signed by the testator or by some person in his presence by his express direction and by two competent witnesses."

And it was held that because the will was not witnessed it was invalid. If this provision relating to the proof of olographic wills did not repeal the former act requiring all wills to be witnessed, it would seem to imply that the provision we are considering did not repeal the requirement of the former act that "all wills must be in writing and signed by the testator," etc. But if it be assumed that the act of 1891 validated nuncupative wills, being the later expression of the legislative will, what is the situation? In 1895 the Legislature passed an act which was approved February 6, 1895, entitled, "An act to amend section two thousand two hundred and thirty-seven (2237) of the Revised Statutes of Wyoming, relating to wills." Which act is as follows:

"Section 1. That Section 2237 of the Revised Statutes of Wyoming is hereby amended so that it shall read as follows. Section 2237. All wills to be valid must be in writing, or typewritten, witnessed by two competent witnesses, and signed by the testator or by some person in his presence and by his express direction, and if the witnesses are competent at the time of attesting the execution of the will, their subsequent incompetency, from whatever cause it may arise, shall not prevent the probate and allowance of the will. No subscribing witness to any will can derive any benefit therefrom unless there be two disinterested and competent witnesses to the same, but if without a will such witness would be entitled to any portion of the testator's estate, such witness may still receive such portion to the extent and value of the amount devised.

"Sec. 2. Any typewritten wills which may have been executed prior to the passage of this act, shall be admitted to probate, notwithstanding the fact that they are typewritten, if in all other respects they are legally executed.

"Sec. 3. This act shall not apply to olographic or holographic wills.

"Sec. 4. This act shall take effect and be in force from and after its passage."

We have set out this act in full for the reason that it is the latest legislation on the subject of wills, and to clearly

show that if the former Wills Act was modified by the Probate Procedure Act of 1891, that act was again modified by the act of 1895, and since that date all wills are governed by its provisions.   We are clearly of the opinion that at least since the taking effect of the act of February 6, 1895, nuncupative wills are not recognized as valid wills by the laws of this state, and that the instrument offered for probate as the will of said Rody Thornton, deceased, was invalid as a will, and that the District Court committed no error in refusing to admit it to probate as such.   The judgment of the District Court, therefore, is affirmed.          *Affirmed.*

SCOTT, C. J., and POTTER, J., concur.