672 P.2d 829 (1983)
In the Matter of the ESTATE OF Robert G. REED, Deceased.
Margaret F. BUCKLEY, Appellant (Petitioner),
v.
R. Brooke HOLSTEDT and Wilhelmina M. Kelly, Appellees (Contestants).
No. 83-30.
Supreme Court of Wyoming.
December 1, 1983.
*830 William G. Myers, III, Sheridan, for appellant.
R. Brooke Holstedt, Sheridan, for appellees.
Before ROONEY, C.J., and THOMAS, ROSE, BROWN and CARDINE, JJ.
BROWN, Justice.
The issue here is whether a tape recorded statement made by a deceased person can be admitted to probate as a will. We agree with the trial court that it cannot, and will affirm.
Robert G. Reed died on March 2, 1982. On April 23, 1982, the court appointed appellees co-administrators, finding that Mr. Reed died intestate. On October 29, 1982, appellant filed a petition for probate of will, alleging that a tape recording found by the police in Mr. Reed's home was the valid will of the deceased. The tape recording was found in a sealed envelope on which was handwritten "Robert Reed To be played in the event of my death only! (signed) Robert G. Reed."[1]
*831 Appellant requested that the letters of administration issued to appellees be revoked and that she be appointed executrix of decedent's will. The trial court refused to revoke the letters of administration and refused to admit into probate the tape recording and its transcript.
Appellant argues that 1) a voice print complies with the "handwriting" requirement of a holographic will, 2) a sound recording clearly expresses the intent of the decedent, and 3) the rules of evidence require a sound recording be admitted as a sufficient writing.

I
The right to make a will did not exist at common law, at least with respect to real property. It is a statutory right, subject to control by the legislature. 1 Bowe-Parker, Page on Wills § 3.1, pp. 62-63 (1960); Merrill v. State, et al., 21 Wyo. 421, 133 P. 134 (1913). Therefore, before a will may be admitted to probate it must comport to the state's statutory scheme. Appellant must demonstrate that the recorded statement offered as a will complies with Wyoming statutes governing wills.
Section 2-6-112, W.S. 1977, provides in part:
"Except as provided in the next section [§ 2-6-113], all wills to be valid shall be in writing, or typewritten, witnessed by two (2) competent witnesses and signed by the testator or by some person in his presence and by his express direction. * * *"
Section 2-6-113, W.S. 1977, provides:
"A will which does not comply with W.S. 1-6-112 is valid as an holographic will, whether or not witnessed, if it is entirely in the handwriting of the testator and signed by the hand of the testator himself."
Appellant contends that the tape recording should be admitted to probate as a form of holographic will.[2] Apparently § 2-6-113, supra, had its origin in the Code of Napoleon. "The holographic will, as a distinct type, originated at French law. Express provision for it was made in the Code of Napoleon. * * *" The Code of Napoleon, § 970, provided that "An holographic testament shall not be valid, unless it be written entirely, dated and signed by the testator with his own hand: it is subjected to no other form." 2 Bowe-Parker, Page on Wills, § 20.2, p. 281 (1960). This is substantially the same requirement found in Wyoming statutes except that it need not be dated and, the words, "it is subject to no other form" have been dropped.
Appellant reminds us that the term "holograph" originated from Greek "holographos" and from the Latin "holographus," meaning written entirely in one's own hand. Webster's Third New International Dictionary, p. 1081 (G. & C. Merriam Co. (1966)). She then postulates that had the Greeks and Romans had the ability to record thoughts on magnetic tape we might have a provision for "holophonic" wills in our statutes.
According to appellant the major difference in magnetic tape recording and hand print is that in the former writing is done through voice print while the latter is done through hand print. Appellant reasons, therefore, that in this age of advanced electronics and circuitry the tape recorder should be a method of "writing" which conforms with the holographic will statute.
In Board of County Commissioners v. Ridenour, Wyo., 623 P.2d 1174, 1184 (1981), we summarize the criterion for ascertaining the meaning of a statute:
"The primary objective in ascertaining the meaning of a law is legislative intent; and, if such intent is expressed clearly and without ambiguity in the language of the statute, such intent must be given effect. Intent must be found in the language of the statute itself Oroz v. Hayes, *832 Wyo. 1979, 598 P.2d 432, 434. Where the language of a statute is plain and unambiguous and conveys clear and definite meaning, there is no occasion for resorting to rules of statutory construction; and the court has no right to look for and impose another meaning. Wyoming State Treasurer v. City of Casper, Wyo. 1976, 551 P.2d 687, 698. The plain, ordinary and usual meaning of words used in a statute controls in the absence of clear statutory provisions to the contrary. State v. Stern, Wyo. 1974, 526 P.2d 344, 346. Courts will not enlarge, stretch, expand or extend a statute to matters not falling within its express provisions. Lo Sasso v. Braun, Wyo. 1963, 386 P.2d 630, 632. Courts will not usurp the power of the legislature by deciding what should have been said. Barber v. State Highway Commission, 1959, 80 Wyo. 340, 342 P.2d 723. * * *"
The Wyoming statutes are clear and unambiguous in their description of an holographic will. A holographic will must be entirely in the handwriting of the decedent.
Black's Law Dictionary (5th ed. 1979), defines handwriting:
"The chirography of a person; the cast or form of writing peculiar to a person, including the size, shape and style of letters, tricks of penmanship, and whatever gives individuality to his writing, distinguishing it from that of other persons. Anything written by hand; an instrument written by the hand of a person, or a specimen of his writing."
Webster's Dictionary defines handwriting as:
"1: Writing in which the hand forms the letters with a pen, pencil, stylus, or similar writing implement; also: the cast or form of such writing peculiar to a particular person 2: something written by hand." Webster's Third New International Dictionary, p. 1028 (G. & C. Merriam Co. (1979)).
Black's further defines the word entire to be,
"Whole; without division, separation, or diminution; unmingled; complete in all its parts; not participated in by others."
Ambiguity exists when a word or group of words in a statute is susceptible to more than one meaning. Johnston v. Board of Trustees, School District No. 1, Wyo., 661 P.2d 1045 (1983). Handwriting is not an ambiguous word, nor is the word entirely. We are not aware of any definition of "handwriting" that includes voice print, nor do we know of any authority that has held that "handwriting" includes voice prints. It seems to be stating the obvious that a voice print is not handwriting; therefore, the requirement that an holographic will be "entirely in the handwriting of the testator" has not been met in this case.
Appellant urges this court to apply the spirit of the holding in Estate of Black, 30 Cal.3d 880, 181 Cal. Rptr. 222, 641 P.2d 754 (1982), by reasoning that we have previously shown an inclination to follow California decisions because part of our probate code was derived from California law. In Estate of Black, supra, the handwriting of the testator was on three pages of a partially preprinted stationer's form. The handwriting was that of testator and included the date and her name. The California Supreme Court held that none of the preprinted words were either material to the substance of the will or essential to its validity as a testamentary disposition. The court concluded that since the handwriting of the testator was sufficient in itself to constitute a valid holographic will the instrument should have been admitted into probate and the preprinted portion did not constitute an essential or necessary part of the will.
In Estate of Black, supra, the court reemphasized that the policy of the law is toward a construction favoring validity and a tendency of both the courts and legislature toward greater liberality in accepting a writing as an holographic will. We need not agree or disagree with Estate of Black, supra, and its philosophy, as that case is easily distinguishable. In Black there were three pages of material in the handwriting of the testator. Here there was a voice *833 print rather than handwriting. The rationale in Black is not applicable here.
We attach no significance to the sealed envelopes containing the tape, upon which the deceased had written, "Robert Reed To be played in the event of my death only! (signed) Robert G. Reed." This writing standing alone has no testamentary consequence, and cannot be considered a will. The holographic will statute is not complied with even if the tape and writing are considered together because no part of the alleged "will" could be considered to be in the handwriting of the testator.
Appellant cites Belfield v. Coop, 8 Ill.2d 293, 134 N.E.2d 249, 58 A.L.R.2d 1008 (1956) and Hultquist v. Ring, Tex.Civ.App., 301 S.W.2d 303 (1957), in support of her contention that a magnetic voice print should be admitted into evidence. In Belfield the recording was conversations with the testator prior to the execution of the will. The recording was tendered in court to demonstrate testamentary capacity and lack of undue influence.
In Hultquist a dictaphone record was offered into evidence to help identify the beneficiaries named within the written instrument. In both Belfield and Hultquist the appellate courts held that the recordings should have been admitted into evidence. In both these cases the use of a recording, in probate proceedings, was limited to evidentiary matters and was not a substitute for the written or handwritten instrument.
The use of a tape recording or other type of voice print as a testamentary instrument is a decision for the legislature to make. We will not enlarge, stretch, expand or extend the holographic will statute to include a testamentary device not falling within the express provisions of the statute.

II
Appellant directs our attention to § 2-6-105, W.S. 1977: "The intention of the testator as expressed in his will controls the legal effect of his dispositions. * * *" She also cites Fidelity Union Trust Company v. Robert, 36 N.J. 561, 178 A.2d 185 (1962), and other cases for the proposition that there should be a readiness among the courts to "strain towards effectuating the probable intent of the testator."
Section 2-6-105, supra, and the cases cited by appellant are pertinent to construction of language within a valid will. We found in Part I of this opinion that the recorded statement of the decedent did not comply with the statutory scheme of wills, and it is not, therefore, a valid will. We cannot consider the testator's intent to justify the probate of a recorded statement that is not a valid will. An otherwise deficient will cannot be made valid by showing the intent of the testator.
We previously stated that we will
"* * * go far to give effect to written testamentary instruments when they come within the statutes relating to wills, but courts have no authority to make wills for persons when they have not done so. * * *" Estate of Boyd, Wyo., 366 P.2d 336, 337 (1961).
Intent is immaterial here because there is no valid will.

III
Appellant argues that the rules of evidence require that a sound-recorded statement is sufficient in form to comply with the holographic will statute, § 2-6-113, supra. Rule 1001(1), Wyoming Rules of Evidence, states:
"`Writings' and `recordings' consist of letters, words, sounds or numbers, or their equivalent, set down by handwriting, typewriting, printing, photostating, photographing, magnetic impulse, mechanical or electronic recording, or other form of data compilation."
Our attention is directed to Darley v. Ward, 28 Cal.3d 257, 168 Cal. Rptr. 481, 617 P.2d 1113, 1115 (1980), where the court stated: "Tape recordings, properly authenticated, are admissible as `writings.' * * *" Darley was not a will or probate case. The recording in question in that case was that of an administrative hearing. Appellant *834 again contends, as she did in the preceding argument, that the tape recording and its transcription is the best evidence of the intent of the testator.
Rule 102, W.R.E., provides:
"These rules shall be construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined."
Generally, the rules of evidence are procedural and not substantive. The rules of evidence are not intended, and cannot be used to change, modify or enlarge a statute.
5 Louisell-Mueller, Federal Evidence, § 549, pp. 276-277 (1981), states:
"In four subdivisions, Rule 1001 defines the terms `writings,' `recordings,' `photographs,' `original,' and `duplicate,' for purposes of the Best Evidence Doctrine in the form adopted by the Rules.
"Taken together, Rules 1001 and 1002 extend the Best Evidence Doctrine to `recordings' and `photographs,' and thus expand to some extent the common law tradition, which had sometimes insisted that the Doctrine applied only to writings. And taken together, Rules 1001 and 1003 make `duplicates' of writings, recordings, and photographs very nearly as admissible as `originals,' thus easing the impact of the Doctrine in cases where it applies. * * *"
There is no indication that the definition of "writings" contained in Rule 1001(1), W.R.E., was designed to change the plain meaning of handwriting in the holographic will statute. Were we to expand or modify the meaning of handwriting as required in the holographic will statute to include a tape recording, we would judicially amend the statute. This we refuse to do.
Affirmed.
NOTES
[1] The tape was transcribed after the police found it; the transcription and the tape were presented to the court.
[2] The purported will here resembles a nuncupative will; however, appellant does not so contend. In any event, it appears that nuncupative wills, at least since February 6, 1895, have not been recognized as valid in Wyoming. Merrill v. State, et al., 21 Wyo. 421, 133 P. 134 (1913).