[S. F. No. 16050. In Bank.—March 3, 1939.]

WILLIAM P. DRUMMEY et al., Petitioners, v. STATE BOARD OF FUNERAL DIRECTORS AND EMBALMERS et al., Appellants.

Frank J. Barry for Appellants.

Tinning & DeLap, Bianchi & Hyman and A. B. Bianchi for Respondents.

George A. Martinelli, Morettini & O'Neill, D. T. Jenkins and Randall O'Neill, as *Amici Curiae,* on Behalf of Respondents.

WASTE, C. J.—William P. Drummey and Aubrey Wilson were duly licensed embalmers. Wilson was also a duly licensed funeral director, doing business under the name of Wilson and Kratzer. The State Board of Funeral Directors and Embalmers, after complaints had been filed, notice given and a hearing held, found both of the above-named parties guilty of several violations of the Funeral Directors and Embalmers Law (Stats. 1929, p. 258) in that, on each of several specified occasions, they unlawfully solicited business in violation of section 15 of the act as amended in 1933 (Stats. of 1933, p. 763). So far as pertinent here section 15 as then amended provides that:

"The Board shall also have the power to suspend or revoke licenses after proper hearing and notice to the licensee, upon such licensee being found guilty of any of the following acts or omissions; . . .

"2. Unprofessional conduct which is hereby defined to include: . . .

"C. Solicitation of human dead bodies by the licensee, his agents, assistants or employees, whether such solicitation occurs after death or while death is impending; provided, this shall not be deemed to prohibit general advertising."

As already indicated, the board, at the conclusion of the hearing, found each of the named parties guilty of several of the counts set forth in the complaints. It ordered the embalmer's licenses of Drummey and Wilson suspended for one year on each count, and the funeral director's license of Wilson and Kratzer suspended for one year on each count. All periods of suspension were ordered to run concurrently, and it was also provided that the funeral director's license, after ten days of such suspension, should be restored to good standing, but should immediately be suspended for the remaining portion of the year upon violation by Wilson within two years of any of the provisions of the act. It should be here noted that although Wilson and Drummey were found guilty on several counts, it is now conceded by all concerned that all of the offenses charged, except that contained in the so-called Shannon count, were committed before the act was amended so as to prohibit solicitation. It is conceded that the findings of the board must be sustained, if at all, by reference to the evidence produced on the Shannon count, and cannot be sustained by reference to the evidence produced on the other counts.

Drummey and Wilson, in the trial court, filed petitions for writs of review. During the pendency of the proceedings this court decided the case of *Standard Oil Co.* v. *State Board of Equalization,* 6 Cal. (2d) 557 [59 Pac. (2d) 119]. Thereafter, the petitioners filed amended pleadings seeking to invoke review, prohibition or *mandamus.* The board interposed demurrers to the petitions. The trial court sustained the demurrers to the petitions for writs of review on the authority of the Standard Oil case, *supra,* and also sustained the demurrers to the petitions for writs of prohibition on the authority of the then recently decided case of *Whitten* v. *California State Board of Optometry,* 8 Cal. (2d) 444 [65 Pac. (2d) 1296, 115 A. L. R. 1]. It overruled the demurrers to the petitions for writs of mandate, and issued its alternative writs. Upon the hearing, by stipulation, the cause was tried on the evidence produced before the board. After consideration of the record, the trial court entered its judgment directing the issuance of a peremptory writ of mandate commanding the board to dismiss the proceedings, and to restore petitioners to the use of their respective li-

censes. From this judgment the board, and its members, have prosecuted the present appeal. Wilson and Drummey prosecuted appeals from the judgments and orders of the trial court made and entered upon the sustaining of the demurrers to their petitions for writs of review and prohibition. These last mentioned appeals have been abandoned by the named appellants and should be dismissed.

On the appeal from the judgment directing the issuance of the peremptory writ of mandate we are left in doubt as to the theory of the trial court, inasmuch as the parties waived the making of findings. Drummey and Wilson, in addition to contending that mandate is the proper remedy to secure the restoration of their licenses, and that the evidence sustains the action of the trial court, contend that the act, and particularly section 15 thereof, is unconstitutional. This contention is unsound. Clearly, the undertaking and embalming businesses or professions are sufficiently of a public nature so that, under the police power, the legislature may regulate and control them. (See cases collected and discussed in 23 A. L. R. 71; 104 A. L. R. 402.) Drummey and Wilson do not seriously contend that these businesses in some of their aspects, are not subject to the police power, but do contend that section 15, in so far as it prohibits solicitation, has no reasonable relation to the protection of public health, safety or welfare; that it is arbitrary and discriminatory; and, further, that it is fatally uncertain, indefinite and unintelligible.

We find nothing arbitrary or discriminatory in the provisions of section 15 prohibiting the direct solicitation of human dead bodies after death or while death is impending. This provision appears to be a reasonable regulation bearing a definite relation to the public welfare. It obviously is aimed at preventing the commercialization of death at a time when those concerned are emotionally upset and easily imposed upon. The legislature acted well within its powers in providing for the protection of the public from the annoyance of direct solicitation of the bodies of members of the family during the period while death is impending or immediately thereafter. It is a matter of common knowledge that during that period the people involved are distraught and emotionally distressed. The obvious purpose of the section is to

prevent embalmers and undertakers from taking unfair advantage of their patrons at a time when such patrons are in no condition to withstand pressure. It is to be noted that the prohibition as to solicitation is not absolute. Solicitation by general advertising is expressly permitted, and solicitation while death is not impending, by implication, also is permitted. The prohibition involved does not prohibit the business—it is simply a reasonable regulation of the business. We find no case directly in point, but in the well reasoned case of *Prata Undertaking Co.* v. *State Board of Embalming,* 55 R. I. 454 [182 Atl. 808], the Rhode Island court upheld as against a similar attack a provision prohibiting undertakers from paying money to others for the securing of business—a provision obviously having the same general purpose as the one here involved.

There is also no merit in the contention that the language of subsection (c) of subdivision 2 of section 15 is so uncertain, indefinite and unintelligible as to render it unconstitutional and void. The purpose of the challenged section is obvious, and the language used is sufficiently certain to carry out the expressed purpose. Even if it be conceded that some of the words used are ambiguous, this does not necessarily render the section invalid. If the provision is capable of any reasonable and practical construction it will not be held to be too vague to be enforced (*County of Tulare* v. *City of Dinuba,* 188 Cal. 664, 667 [206 Pac. 983]; *Pacific Coast Dairy* v. *Police Court,* 214 Cal. 668 [8 Pac. (2d) 140, 80 A. L. R. 1217]). The section easily meets this test.

Drummey and Wilson further contend that the section denies them due process. In this connection it is urged that the act fails to provide for a proper notice of hearing, although it is conceded that reasonable notice was in fact given. The act provides that the power to revoke or suspend licenses shall be exercised "after proper hearing and notice to the licensee". It is contended that the act is unconstitutional because, although it provides for notice, it does not specify the form, manner, extent or duration of notice, and that this is required under the due process provisions of the state and federal Constitutions. The contention is untenable. Due process does not require any particular form of notice or method of procedure. If the statute provides for reasonable notice and a reasonable opportunity to be heard, that

is all that is required. (*Eley* v. *Gamble*, 75 Fed. (2d) 171; *Brecheen* v. *Riley*, 187 Cal. 121 [200 Pac. 1042].) The other arguments of these parties as to the constitutionality of the act, or as to the procedure adopted by the board are clearly unsound and need not be discussed.

The board, in attacking the judgment of the trial court, contends that mandate is not available to one who has been improperly deprived of a license by an administrative board to secure the restoration of that license, and further, if it be determined that mandate is the proper remedy, on the record, it was improper to issue the peremptory writ in this case.

The solution of the problem as to the proper remedy of those aggrieved by the action of general state-wide administrative boards in suspending or depriving holders of existing licenses to secure a "review", in its broadest sense, of the board's action, is one that finds no positive answer in the cases heretofore decided. Many years ago it was held that *certiorari* was not the proper remedy inasmuch as such boards do not and cannot exercise judicial powers. (*Tulare Water Co.* v. *State Water Com.*, 187 Cal. 533 [202 Pac. 874]; see, also, *Department of Public Works* v. *Superior Court*, 197 Cal. 215 [239 Pac. 1076].) The doctrine of the Tulare case was reaffirmed by this court in the Standard Oil case, *supra*. In spite of the clear-cut holding in the Tulare case, prior to the decision in the Standard Oil case, it had been assumed in some cases, and expressly held in others, that such administrative boards exercise at least *quasi*-judicial functions, and that *certiorari* could be used to review their determinations. In view of the clear-cut holding to the contrary in the Standard Oil case, the above-mentioned cases must be deemed to have been overruled. The theory of the Tulare and Standard Oil cases is that, if the legislature attempted to confer judicial or *quasi*-judicial power on state-wide administrative boards, the statutes would be unconstitutional as in violation of section 1 of article VI of the state Constitution, which vests the entire judicial power of the state in the courts, except as to local boards, and the railroad and industrial accident commissions, which are governed by special constitutional provisions. Based on this premise it was concluded that state-wide administrative boards do not exercise judicial or *quasi*-judicial powers. (See, also, *Cullinan* v. *Superior Court*, 24 Cal. App.

(2d) 468 [75 Pac. (2d) 518, 77 Pac. (2d) 471].) *Certiorari* as presently provided for in the Constitution, and as defined by section 1068 of the Code of Civil Procedure will lie only to review judicial action. It is obvious therefore that *certiorari* is not the proper remedy.

As a necessary corollary to this rule, it was held in the Whitten case, *supra,* that the writ of prohibition cannot be used to restrain administrative boards from taking action, even though it be alleged that such board is acting unlawfully and in excess of its powers, for the reason that the office of the writ of prohibition is limited by the Constitution to the restraint of a threatened exercise of judicial power in excess of jurisdiction, and does not lie to a board or officer exercising purely administrative or ministerial functions. Prohibition is therefore not the proper remedy.

There is no provision in the statute here involved for a trial *de novo* in the superior court such as is provided in Deering's General Laws of 1937, Act 3796, section 46, in connection with the review of some of the decisions of The State Board of Equalization. Under such circumstances, in the absence of a proper statutory method of review, mandate is the only possible remedy available to those aggrieved by administrative rulings of the nature here involved. This was pointed out in the Whitten case, *supra.* The conclusion therein stated is sound. Historically, the writ of mandate was invented to provide a remedy where no other remedy existed. As is stated in 9 Halsbury's Laws of England, 744, section 1269, in speaking of the writ of *mandamus*:

"Its purpose is to supply defects of justice; and accordingly it will issue, to the end that justice will be done, in all cases where there is a specific legal right and no specific legal remedy for enforcing such right." (See, also, 16 Cal. Jur. 764, sec. 4.) From an early date in this as well as other states it has been held that, where no other remedy is available, *mandamus* is the proper remedy for one improperly deprived of a professional license by an administrative board to secure the restoration of such license. (*People* v. *Turner,* 1 Cal. 143 [52 Am. Dec. 295]; *People* v. *Turner,* 1 Cal. 190; see annotation, 95 A. L. R. 1424; 16 Cal. Jur. 275, sec. 58.)

Although these and other authorities establish that *mandamus* is the proper remedy to secure the restoration of a professional license of which the petitioner has been im-

properly deprived, where no other remedy exists, the authorities do not clearly establish the scope of the review on *mandamus*. In most jurisdictions it is held that such administrative boards exercise at least *quasi*-judicial functions and that *certiorari* is the proper remedy. On such a review (by *certiorari*) findings of the board based on substantially conflicting evidence are binding on the courts. The cases holding that the findings of such boards are binding on the courts, are sound, in those jurisdictions where such boards properly exercise judicial powers, but they are of no weight in jurisdictions like California where the boards do not, and constitutionally cannot, exercise judicial powers. In such jurisdictions the scope of the review must be determined by principles other than those involved in jurisdictions where such boards are in effect special trial courts properly exercising judicial power.

 It is frequently stated that the discretion conferred upon administrative boards cannot be controlled by *mandamus*, except to prevent an abuse thereof. (*Bank of Italy* v. *Johnson*, 200 Cal. 1 [251 Pac. 784], and cases therein reviewed.) This rule applies only where a true discretion has been conferred by the statute. A proper illustration of this rule would be, where an administrative board is given power, if certain facts are found to exist, to take certain action, the statute providing directly or indirectly that the board is given discretion as to whether it will act after the facts have been ascertained, and providing that the board's determination shall be final. In such a case the determination as to whether the board will act is purely administrative, and its discretion cannot be controlled by *mandamus*. (*Hall* v. *Geiger-Jones Co.*, 242 U. S. 539 [37 Sup. Ct. 217, 61 L. Ed. 480, Ann. Cas. 1917C, 643, L. R. A. 1917F, 514]; *People* v. *Globe Grain & Milling Co.*, 211 Cal. 121 [294 Pac. 3].)

 As distinguished from the above cases, it is equally well settled that where a statute requires an officer to do a prescribed act upon a prescribed contingency, his functions are ministerial, and upon the happening of the contingency the writ may be issued to control his action. (*Stockton & V. Railroad Co.* v. *Stockton*, 51 Cal. 328; *Wood* v. *Strother*, 76 Cal. 545 [18 Pac. 766, 9 Am. St. Rep. 249]; *Inglin* v. *Hoppin*, 156 Cal. 483 [105 Pac. 582]; 16 Cal. Jur., p. 812, sec. 30.)

■ Neither of these rules is controlling in the present case. We are here dealing with a statute which confers certain fact-finding powers on the board, with no indication that the legislature intended the facts so found to be binding on the courts, and, upon ascertaining the facts, the board is authorized to cancel or suspend the license theretofore possessed by the person charged. No method of review is provided in the statute. The only possible remedy of the person adversely affected is by writ of mandate. We are thus presented with the question as to what weight the courts should give to the findings of the board—or, stated another way, are the findings of the board, if based on substantial although conflicting evidence, binding on the courts in the *mandamus* proceeding, as they would be in a *certiorari* proceeding or on an appeal? After considering the various possibilities, we can see no escape from the conclusion that in such a proceeding the court to which the application for mandate is made must weigh the evidence, and exercise its independent judgment on the facts, as well as on the law, if the complaining party is to be accorded his constitutional rights under the state and federal Constitutions. The state constitutional provision discussed, *supra*, prohibits the conferring of judicial power on such administrative boards. If it should be held that the board's action in canceling or suspending an existing license is binding on the courts, if such action is predicated on conflicting evidence, we would be necessarily holding that such board is exercising at least *quasi*-judicial powers. It is the essence of judicial action that finality is given to findings based on conflicting evidence. If the statute be so construed it would violate the state Constitution. Moreover, for a purely administrative board to deprive a person of an existing valuable privilege without the opportunity of having the finality of such action passed upon by a court of law, would probably violate the due process clause of the federal Constitution. Although there is some confusion in the federal cases, the more recent decisions by the United States Supreme Court have indicated that if binding fact-finding power is conferred on purely administrative boards, and if the courts in reviewing the administrative board's actions do not exercise an independent judgment on the facts as well as on the law, then the party adversely affected, at least where constitutional rights are involved, has been deprived of due process.

In *St. Joseph Stock Yards Co.* v. *United States,* 298 U. S. 38, 52 [56 Sup. Ct. 720, 80 L. Ed. 1033], that court stated:

"Legislative agencies, with varying qualifications, work in a field peculiarly exposed to political demands. Some may be expert and impartial, others subservient. It is not difficult for them to observe the requirements of law in giving a hearing and receiving evidence. But to say that their findings of fact may be made conclusive where constitutional rights of liberty and property are involved, although the evidence clearly establishes that the findings are wrong and constitutional rights have been invaded, is to place those rights at the mercy of administrative officials and seriously to impair the security inherent in our judicial safeguards. That prospect, with our multiplication of administrative agencies, is not one to be lightly regarded. It is said that we can retain judicial authority to examine the weight of evidence when the question concerns the right of personal liberty. But if this be so, it is not because we are privileged to perform our judicial duty in that case and for reasons of convenience to disregard it in others. The principle applies when rights either of person or of property are protected by constitutional restrictions. Under our system there is no warrant for the view that the judicial power of a competent court can be circumscribed by any legislative arrangement designed to give effect to administrative action going beyond the limits of constitutional authority." (See, also, *Ohio Valley Water Co.* v. *Ben Avon Borough,* 253 U. S. 287 [40 Sup. Ct. 527, 64 L. Ed. 908]; *Crowell* v. *Benson,* 285 U. S. 22 [52 Sup. Ct. 285, 76 L. Ed. 598].)

In view of these principles, it necessarily follows that the court to which the application for mandate is made to secure the restoration of a professional license must exercise an independent judgment on the facts. This does not mean that the preliminary work performed by the administrative board in sifting the evidence and in making its findings is wasted effort. As was pointed out in the St. Joseph Stock Yards case, *supra,* in weighing the evidence the courts can and should be assisted by the findings of the board. The findings of the board come before the court with a strong presumption of their correctness, and the burden rests on the complaining party to convince the court that the board's decision is contrary to the weight of the evidence.

We think the limitations on the rule that the court must exercise its independent judgment on the facts in such cases, suggested by the United States Supreme Court in the St. Joseph Stock Yards case are sound. The findings of a board where formal hearings are held should and do come before the courts with a strong presumption in their favor based primarily on the disputable presumption contained in section 1963, subsection 15, of the Code of Civil Procedure ''That official duty has been regularly performed''. Obviously, considerable weight should be given to the findings of experienced administrative bodies made after a full and formal hearing, especially in cases involving technical and scientific evidence. Another limitation on the rule also suggests itself. Normally applications for such writs should be filed in the trial courts, whose normal function it is to determine and ascertain controverted issues of fact.

This procedure where the courts in reviewing, in its broadest sense, the actions of administrative boards are given the power to weigh the evidence is not unknown to our present law. The recent amendments to the liquor law have been referred to, *supra*. Somewhat similar provisions are contained in various tax statutes providing for payment under protest and suit in the superior court, where the tax controversy is tried *de novo*. The State Bar disciplinary cases in which the court has power to weigh the evidence offer another illustration. (See cases collected 9 Cal. Jur. Supp., p. 467, sec. 103.)

Applying these principles to the facts of the present case it is obvious that the judgment of the trial court ordering the issuance of a peremptory writ commanding the board to reinstate the respective licenses of Drummey and Wilson must be affirmed. No findings were made by the trial court, findings having been waived. The cause was tried in the court below, by stipulation, on the record before the board. Under principles already discussed, if any substantial evidence is found in the record to support the trial court's judgment, the judgment must be affirmed. It must be conclusively presumed on this appeal that the trial court weighed the evidence giving due weight to the presumption in favor of the board's findings, but nevertheless, exercising its independent judgment, found against the board.

As already pointed out, on this appeal, there is involved solely the so-called Shannon count. Although there is considerable evidence in the record that, on numerous occasions prior to the adoption of the 1933 amendment to the act prohibiting solicitation, Drummey, on behalf of his employer, solicited business, that evidence is not involved on this appeal. All counts supported by that evidence, as already pointed out, have been properly abandoned by the board.

The record in reference to the Shannon count, which is the only count now before this court, shows the following:

Drummey was not only manager of Wilson, who was doing business as a funeral director under the name of Wilson and Kratzer, but was also a deputy of the coroner, the latter maintaining his official office at the funeral parlors of Wilson. Several informal complaints had been made to the board by other funeral directors operating in the city of Richmond where Wilson maintained his offices. Several of these complaints involved other matters than solicitation, and several of them dealt with alleged solicitation when such act was not a punishable offense. Most of the complaints, including the one involving the body of Mrs. Shannon, were predicated on the charge that Drummey as deputy coroner would investigate violent deaths in his official capacity, and would then use his official position to secure the business for Wilson and Kratzer. Before the board caused a formal complaint to be filed against either of the licensees, it held an informal investigation, at which Drummey was present but Wilson was not. At this hearing a representative of the board made the statement that "an argument came up, and this is not a complaint—simply to straighten out the matter". The testimony of several witnesses was taken and transcribed. So far as the Shannon case is concerned it appears that Mrs. Shannon was killed in an accident; that Drummey as deputy coroner investigated; that the family of the deceased authorized Wilson and Kratzer to conduct the funeral; that pursuant to this authorization the body was placed in a casket; that thereafter the family authorized another funeral director to conduct the funeral; that the body was not delivered to this second funeral director for five or six days. The main grievance of the complaining funeral director had nothing to do with solicitation, but was predicated on the charge that the body had not been turned over to the relatives for several days, and that Wilson

and Kratzer had used undue haste in placing the body in a casket. The coroner explained that the body had been detained at his express and official orders at the request of various law enforcement bodies that were investigating. The circumstances concerning the placing of the body in the casket were fully and reasonably explained. Drummey voluntarily testified and fully explained all of the facts surrounding his connection with the Shannon case. So far as solicitation is concerned he testified that as deputy coroner he investigated the Shannon death; that he interrogated the family concerning the death; that after securing the necessary official data from the family he told them: ''Now I am representing Wilson and Kratzer who have this establishment here. What are your wishes in regard to the service? Have you an undertaker in mind?'' Upon being informed that they desired Wilson and Kratzer to handle the case, arrangements were made by Drummey. While this testimony may be susceptible of the interpretation that Drummey was guilty of improper solicitation it is also capable of a contrary interpretation.

After this informal hearing, a formal complaint was filed against Drummey and Wilson. At the formal hearing on the charges contained in this complaint neither Drummey nor Wilson was represented by counsel. The attorney for the board introduced into evidence the transcript taken at the informal hearing. On the Shannon count no member of the Shannon family was called as a witness. No witness testified that Drummey improperly solicited the Shannon body. Drummey again testified. His testimony on this count dealt only incidentally with solicitation. In so far as solicitation is concerned his testimony is clearly susceptible of the interpretation that no improper solicitation was indulged in by him. Reading the record as a whole we cannot say that the evidence without conflict establishes improper solicitation on this count. Under such circumstances, the trial court having power to weigh the evidence, we must conclusively presume that the trial court performed its duty, gave full weight to the presumption of validity of the board's findings, but nevertheless found against the board on this count. The determination of the trial court on conflicting evidence on the facts is binding on this court on this appeal.

The appeals by Wilson and Drummey from the judgments and orders of the trial court made and entered upon the sustaining of the demurrers to their petitions for writs of review and prohibition are dismissed. The judgment directing the issuance of a peremptory writ of mandate is affirmed.

Shenk, J., Curtis, J., Langdon, J., Edmonds, J., and Seawell, J., concurred.

Houser, J., concurred in the judgment.