[Civ. No. 53080. Second Dist., Div. Five. Feb. 16, 1979.]

VERNELL WOODARD, Plaintiff and Appellant, v.
PERSONNEL COMMISSION OF THE COMPTON UNIFIED
SCHOOL DISTRICT, Defendant and Respondent.

**COUNSEL**

Martin Taller for Plaintiff and Appellant.

Linda F. Thais for Defendant and Respondent.

**OPINION**

**STEPHENS, J.**—Appellant Vernell Woodard appeals from a judgment denying his petition for writ of mandate, in which he sought to have the decision of the Personnel Commission of the Compton Unified School District (Personnel Commission) affirming his termination from the position of grounds worker I set aside. In his petition he alleged that the findings of the commission were not supported by the weight of the evidence; that the decision was not supported by the findings; and that the penalty imposed was excessive.

Woodard was employed as a groundsman I from October 12, 1967, until his termination on December 24, 1975.[1] On November 21, 1975, charges were presented by Henry Wilson, director of maintenance and operations, to the superintendent of the district, requesting that Woodard be terminated. In this letter, Wilson outlined various occasions on which he asserted that Woodard had been derelict in his duties and recited two separate conversations Woodard had had on November 6, 1975, with Wilson himself and Bernie Woodhouse, Woodard's supervisor. In those conversations, Wilson claimed that Woodard had been discourteous. Subsequently, Woodard received a letter on December 15 from Roy C. Brooks, director of classified personnel, advising him that Wilson was recommending his termination, that Woodard was to meet with Wilson on December 23 to discuss the matter, and that Woodard was suspended from his duties effective December 24, pending approval of his termination by the board of trustees at their regular meeting on January 13, 1976.

---

[1] As such, Woodard was a classified employee of the Compton Unified School District and disciplinary actions taken against him are governed by sections 45303 and 45304 of the Education Code (reorganized) and the rules and regulations of the district, section 60.1000 et seq.

On January 14, Woodard was advised that the board of trustees had decided to terminate him on the grounds of dereliction of duty and discourteous treatment of fellow employees. Pursuant to the procedures outlined in section 45304 of the Education Code, Woodard sent a letter to the district on January 22d requesting an appeal hearing at their earliest convenience and stating that the action taken was not in accord with the facts, and further categorically denying all charges made against him.

However, it was not until five months later, on June 4 and 8, 1976, that such a hearing was held before the personnel commission, hearing officer Bicknell J. Showers presiding. The findings of fact and proposed decision, issued on June 25, stated that the action of the district in terminating Woodard was affirmed. The personnel commission adopted the findings of fact and proposed decision as its own decision in the case on July 8 and notified Woodard thereof on July 9. On September 28, 1976, Woodard filed a petition for writ of administrative mandate, pursuant to Code of Civil Procedure, section 1094.5.

Following filing of the petition, appellant's counsel filed a notice for production of the administrative transcript, together with points and authorities and a declaration of counsel, stating that Woodard was literally bankrupt and was unable to pay the $750 required for production of the transcript. The motion was denied. Woodard subsequently filed supplemental points and authorities in support of the proposition that an administrative transcript need not be submitted, but that a summary of the evidence as it was presented before the administrative body would be sufficient. In its answer, however, the personnel commission took the position that there was a need for the entire record, including the transcript itself, and that "[t]he only approach the Court can take in this situation is to deny the petition."[2]

On November 9, 1976, the petition was denied following oral argument by counsel. Pursuant to appellant's request, the court filed findings of fact and conclusions of law on January 13, 1977, on which date the judgment denying the writ was filed and entered. This appeal followed.[3]

---

[2]By way of a stipulation, we have been informed that a tape recording was made of the hearings preceding Woodard's order of dismissal and that no typed transcript has been r ade. We are also informed that the superior court judge hearing the writ of mandate did not have the tape available.

[3]Appellant filed a notice of appeal, in propria persona, on March 11, 1977, but failed to timely designate the record on appeal. Subsequently, through counsel, a motion for relief of default for failure to timely designate the record on appeal was granted on May 11, 1977.

Code of Civil Procedure section 1094.5, under which appellant sought review by the superior court of the decision of the administrative board that had upheld his termination, was enacted by the Legislature in 1945. This section authorizes the reviewing court to exercise its independent judgment in certain types of cases. Therefore, it has been held that section 1094.5 empowered the Supreme Court to "establish standards for determining which cases require such independent judgment review and which call for only a substantial evidence review of the entire record." (*Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 140 [93 Cal.Rptr. 234, 481 P.2d 242], citing *Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 914-915 [80 Cal.Rptr. 89, 458 P.2d 33].) Subsequently, in *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28 [112 Cal.Rptr. 805, 520 P.2d 29], the Supreme Court held that there was no longer "any rational or legal justification for distinguishing with regard to judicial review between, on the one hand, local agencies and state agencies of local jurisdiction and, on the other, state agencies of legislative origin having statewide jurisdiction." (11 Cal.3d at p. 32.) Accordingly, the court held "that the rule of judicial review applicable to adjudicatory orders or decisions of the latter class of agencies—which was reaffirmed and explained to us in *Bixby*—is also applicable to adjudicatory orders or decisions of agencies in the former class. That rule is as follows: If the order or decision of the agency substantially affects a fundamental vested right, the trial court, in determining under section 1094.5 whether there has been an abuse of discretion because the findings are not supported by the evidence, must exercise its independent judgment on the evidence and find an abuse of discretion if the findings are not supported by the weight of the evidence. If, on the other hand, the order or decision does not substantially affect a fundamental vested right, the trial court's inquiry will be limited to a determination of whether or not the findings are supported by substantial evidence in the light of the whole record." (*Id.,* at p. 32.)

To resolve the problem presently posed, we deem it appropriate to review the basic policy reasons behind the *Bixby* decision, and thus behind the concept of judicial review of administrative decisions.

The court in *Bixby* (4 Cal.3d 130) noted initially that the separation of powers doctrine, as articulated in the California Constitution, article III, derives from a basic philosophy of our constitutional system of government, that of the system of checks and balances by which one branch of government is protected against the overreaching of any other branch. "Of such protections, probably the most fundamental lies in the power of

the courts to test legislative and executive acts by the light of constitutional mandate and in particular to preserve constitutional rights, whether of individual or minority, from obliteration by the majority. [Citations.] Because of its independence and long tenure, the judiciary probably can exert a more enduring and equitable influence in safeguarding fundamental constitutional rights than the other two branches of government, which remain subject to the will of a contemporaneous and fluid majority. [Citations.]" (*Id.*, at p. 141.)

The court then went on to survey the changes wrought in our government due to the proliferation of administrative bureaus, and the initial concern by the courts that this burgeoning bureaucracy would endanger individual rights. However, in the late 1930's, the courts redefined their role in this area by allowing the legislative and executive branches of government to deal with economic complexities, while reserving judicial intervention for protection of vested fundamental rights.

Earlier in *Bixby*, the court, in pointing to the case law from which section 1094.5 originally sprang, recognized that a significant step occurred in 1939 when the case of *Drummey* v. *State Bd. of Funeral Directors* (1939) 13 Cal.2d 75 [87 P.2d 848], held that the decisions of the State Board of Funeral Directors suspending two embalmers' licenses must be reviewed by the trial court exercising its independent judgment on the facts. (13 Cal.2d at pp. 82-85.) In reaching this decision, the court in *Drummey* quoted from *St. Joseph Stock Yards Co.* v. *United States* (1936) 298 U.S. 38, 52 [80 L.Ed. 1033, 1041, 56 S.Ct. 720], as follows: " 'Legislative agencies, with varying qualifications, work in a field peculiarly exposed to political demands. Some may be expert and impartial, others subservient. It is not difficult for them to observe the requirements of law in giving a hearing and receiving evidence. But to say that their findings of fact may be made conclusive where constitutional rights of liberty and property are involved, although the evidence clearly establishes that the findings are wrong and constitutional rights have been invaded, is to place those rights at the mercy of administrative officials and seriously to impair the security inherent in our judicial safeguards. That prospect, with our multiplication of administrative agencies, is not one to be lightly regarded.' " (13 Cal.2d 75, 85.) The court in *Bixby* (4 Cal.3d 130) then paused in footnote 4 (p. 138) to note that although *St. Joseph Stock Yards* and *Ohio Valley Water Co.* v. *Ben Avon Borough* (1920) 253 U.S. 287 [64 L.Ed. 908, 40 S.Ct. 527], served as the initial impetus for *Drummey*, their interest has been described as purely

historical relative to the present status of federal administrative law, by one noted commentator, Professor Davis author of Administrative Law Treatise. However, despite Professor Davis' announced opposition to independent judicial review of administrative agencies' decisions, as required in both *Ben Avon* and *St. Joseph,* the court in *Bixby* pointed out that both he and other commentators have found that state courts continue to apply this doctrine.[4] By enactment of section 1094.5, Code of Civil Procedure, the California Legislature followed the lead of the courts and judicial review of administrative decisions became firmly ensconced in California law.

■ We address the central question presented by the facts of this case: whether a court may in cases where independent review is mandated, in the legitimate exercise of its discretion, order a transcript of the administrative proceeding under attack on a petition for writ of administrative mandamus when the petitioner is indigent and cannot pay the cost of such a transcript and the administrative agency takes the position that review of its decision is impossible without it. We see two alternatives: (1) permit the appellant to provide a statement of the case; if respondent contends that the true (full) record does not support appellant's statement, respondent must provide a statement containing those items necessary to bring appellant's statement into conformity with the record; or (2) must produce the transcript, or, as in the instant case, the tapes. In this case, since respondent has refused to do the former, it must do the latter.

. We begin our analysis of the question presented by noting that in *Civil Service Commission* v. *Superior Court* (1976) 63 Cal.App.3d 627 [133 Cal.Rptr. 825], the court held that "a court is without power to order that

[4]In Administrative Law of the Seventies published in 1976, Professor Davis took this potshot at California's continued adherence to the requirement of independent review of administrative decisions: "Indeed, the treatise writer looks less and less to the state courts for new ideas that deserve attention. Major developments in state administrative law are often erratic movements back into medievalism such as *Strumsky* v. *San Diego County Employees Retirement Assn.* [citation], invoking a theory of separation of powers to require in the name of the California Constitution a de novo judicial review of a local agency's decision which substantially affects 'a fundamental vested right, to wit, plaintiff's right to receive a service-connected death allowance.' One who is in quest of understanding of administrative law is seldom rewarded by long exposure to dreary state court opinions, although occasionally some nuggets can be picked up." (Administrative Law of the Seventies, § 1.04, pp. 8-9.)

Despite Professor Davis' disinclination to categorize *Strumsky* as a "nugget" in the administrative law field, that case is demonstrative evidence of this state's continued adherence to the principles announced by the United States Supreme Court as quoted above from *St. Joseph.*

an indigent person seeking judicial review of the administrative proceeding involving an economic interest be supplied with a transcript of the proceedings at the expense of the agency." (*Id.,* at p. 629.) However, the court expressly reserved judgment on the issue of whether section 1094.5, Code of Civil Procedure, vests with the trial court the power to order the agency to cause the record of its proceedings to be transcribed and the transcript filed with the court, saying that that issue was not ripe on the record since the superior court had ordered the agency to provide the indigent petitioner himself with the transcript.[5] That is the question that we answer here.

We recognize that a transcript (or tapes) may not always be crucial or even necessary for a court to independently review the proceedings of an administrative board. In many cases, an agreed or settled statement of facts and any exhibits that were before the board will suffice. When appellant's request for a transcript was denied, he sought to proceed on such a statement, incorporating the documents that were before the board. Counsel for the board promptly maintained that it was not the board's duty to furnish a transcript and that the evidence summarized by appellant's counsel was one-sided and insufficient for the court to exercise its independent judgment. Therefore, it was urged that the presumption contained in Evidence Code section 664 that the official duty of the board had been regularly performed should prevail. There was no mention in the board's return to the writ of what additional evidence should be considered by the judge, due to the board's position that a transcript was absolutely necessary to an adjudication of the case.[6] Apparently, no one offered the tape-recorded proceedings into evidence.

---

[5]In a lengthy dissent, Justice Hanson chose to address the issue, as he felt it was ripe on the record. He concluded that there was no "constitutional, statutory or common law authority vesting the superior court with the power to order the agency . . . to supply the indigent litigant . . . in a civil appeal . . . a reporter's transcript of the proceedings before the hearing officer free of charge and at public expense." (63 Cal.App.3d at 633.) Although he speaks in substantially the same terms as the majority, he actually addressed in his discussion the broader issue of the power of the court to shift the burden of the cost of the transcript to the administrative agency, regardless of whether the transcript is provided the litigant or the court, and concludes that it does not have such a power. However, he obviously was unable to convince his colleagues of the validity of this broad proposition and we have concluded, based upon the facts of this case, that in the proper instance the court does possess such a power.

[6]In *Fickeisen* v. *Civil Service Com.* (1950) 98 Cal.App.2d 419, 421 [220 P.2d 605], the court recognizes the ability of the parties to an action similar to this one to summarize the evidence rather than providing an entire transcript of the proceeding under attack. Similarly, in *County of Contra Costa* v. *Social Welfare Board* (1962) 199 Cal.App.2d 468, 471 [18 Cal.Rptr. 573], the court mentions that it is sufficient, in the absence of a transcript, for the substance of the evidence to be alleged.

As a result of the position taken by the board and the fact that under *Civil Service Commission* v. *Superior Court, supra,* 63 Cal.App.3d 627, appellant, himself, was not entitled to a transcript, appellant was virtually in a classic "Catch-22" position, it being more than likely that the existence of a tape was unknown to him. ■ It was maintained by the board that a transcript was essential, but appellant could not obtain it due to his indigency, which here was, in turn, the result of his being terminated by the board.

Nonetheless, the trial judge purported to use his independent judgment in denying the writ. However, in so doing, he stated: "I find that there was evidence in here that there was a dereliction of duty and that there was discourteous treatment of fellow employees, particularly his boss, . . . [¶] I will make an independent judgment to that effect from what I have read in the record, and I have read the entire record. But even if this is not a case for independent judgment, the hearing officer certainly had a basis for his conclusion and the ultimate decision in this case." Then, in response to an inquiry from appellant's counsel as to whether he might consider sending the case back to the board so that it could reexamine the severity of the penalty, the judge replied: "Without a transcript, I can't be that definitive, so I am not going to do it."

We feel that the judge did not in fact use the required independent judgment, as on the state of the record before him he could not have done so. Even the way in which he rendered his judgment points to the fact that he only found that the decision of the board was supported by substantial evidence, a less stringent test than that which is appropriate in a case where the administrative agency's action affects a vested fundamental right. (*Strumsky* v. *San Diego County Employees Retirement Assn., supra,* 11 Cal.3d 28.) Therefore, appellant did not get that independent judicial review of the administrative decision to which he is entitled.

■ With the policy articulated above upon which both the courts and the Legislature in California have based their judgment that a petitioner in appellant's position is entitled to an independent judicial review fully in mind, we find that the trial court erroneously refused to exercise its discretion and order that the administrative agency furnish it with a transcript of the proceedings (or the tape recordings). In light of the agency's refusal to accept as true petitioner's statement of the case or to supplement the statement so as to bring it into conformity with the record, this was the only way for the court to establish the evidence of the litigation before it. To hold otherwise would allow the personnel

commission to foreclose appellant's right to independent judicial review. We do not hold that in every case an administrative agency such as respondent must supply a transcript of its proceedings to an indigent petitioner seeking to attack them. When, as here, however, the administrative agency asserts that a review of the complete record is the only way, or perhaps even simply the best way, that a trial court can exercise its judgment and then refuses to assist the petitioner in compiling an agreed summary of the facts, the agency can be foreclosed from disputing petitioner's statement of fact or compelled to produce the needed transcript. We note the simplicity of either placing the tapes in evidence or comparing the contents of the tapes with the offered statement of facts.

There was no indication in *Civil Service Commission* v. *Superior Court, supra,* 63 Cal.App.3d 627, that the indigent litigant could not have proceeded on an agreed or settled statement of the facts, or by references to existing tape recordings. Apparently there was no exploration of those possibilities since the trial court granted his request for a transcript before trial began. In allowing, in this case, the court to exercise its discretion by ordering the transcript filed (or the tapes produced) with the court when respondent refused to accept petitioner's statement, we do not counter the decision in *Civil Service Commission.* That the court in that case refused to decide the very issue that is presented here points to the fact that it recognized that there might be a situation where the court could make such an appropriate order. We believe that this is such a situation, and that even though the court did not have the power to initially order a transcript for Woodard (as it recognized in denying his request for such prior to trial), once the true posture of the case became apparent at trial, a continuance in order to allow the agency to have the transcript prepared and filed with the court was not only possible, but apparently necessary. At the very least, the tapes should have been placed in evidence and the contents reviewed by the judge.

We also note that it was the absence of the transcript that lead the judge to decline to send the case back to the administrative board to reconsider the severity of the penalty imposed. Since we have determined that the case must be remanded for proceedings consistent with the views expressed herein, we take this opportunity to briefly set out the legal standards by which the trial court is to judge the penalty imposed, in this case the most severe possible, termination.

In *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774], citing *Harris* v. *Alcoholic Bev. etc. Appeals Bd.*

(1965) 62 Cal.2d 589, 594 [43 Cal.Rptr. 633, 400 P.2d 745], the court said: "Generally speaking, '[i]n a mandamus proceeding to review an administrative order, the determination of the penalty by the administrative body will not be disturbed unless there has been an abuse of its discretion.' ([Citations.]; *Martin* v. *Alcoholic Bev. etc. Appeals Bd.* (1961) 55 Cal.2d 867, 876 . . .)" (*Id.,* at p. 217.) The court then pointed out that although the board has broad discretion in determining what penalty or discipline to impose, " 'it does not have absolute and unlimited power. It is bound to exercise legal discretion, which is, in the circumstances, judicial discretion.' *Harris, supra,* citing *Martin, supra,* and *Bailey* v. *Taaffe* (1866) 29 Cal. 422, 424.)" (*Id.,* at pp. 217-218.) Finally, the court said that the overriding consideration in determining if there has been an abuse of discretion is the extent to which the employee's conduct resulted in, or if repeated is likely to result in, harm to the public service, but that other factors are the circumstances surrounding the misconduct charged and the likelihood of its recurrence. (See also *Blake* v. *State Personnel Board* (1972) 25 Cal.App.3d 541, 550-551, 554 [102 Cal.Rptr. 50].) With the transcript of the administrative proceedings in front of it, or the tapes placed in evidence and contents considered, and the above principles as guidance, the trial court, on remand, will be able to make an independent judgment and determine from the entire record whether the findings of the commission are supported by the weight of the evidence, whether the decision is supported by the findings, as well as whether the penalty imposed is excessive.

The judgment is reversed and the case remanded to the lower court for proceedings consistent with the views expressed herein.

Kaus, P. J., and Hastings, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied April 19, 1979.