[S.F. No. 24154. Oct. 23, 1980.]

EARL DARLEY, Plaintiff and Appellant, v.
JOHN M. WARD et al., Defendants and Respondents.

COUNSEL

Brian W. Newcomb, Carl L. McConnell and Ellen S. Levine for Plaintiff and Appellant.

Keith C. Sorenson, District Attorney, and Gregory J. Antone, Deputy District Attorney, for Defendants and Respondents.

OPINION

NEWMAN, J.—Plaintiff appeals from a judgment denying mandate to prevent reductions of service at a county-run neighborhood health clinic. We conclude that the trial court improperly excluded a major portion of the administrative record from the mandate proceeding. The judgment must therefore be reversed.

Fair Oaks is a low-income neighborhood in Redwood City. For many years the county had provided indigent health care services through a central facility, Chope Hospital in the City of San Mateo. In September 1975, after study, the board authorized creation of Fair Oaks Clinic (Fair Oaks) as a one-year experiment in decentralizing the health care system. Continued operation was approved in September 1976 and again in March 1977. In May 1977, however, the county health and welfare director finally recommended that Fair Oaks be closed; and the board so resolved on May 17.

Earl Darley, an indigent resident of the neighborhood, then demanded that the board comply with Health and Safety Code sections 1442 and 1442.5 before altering service at Fair Oaks. Section 1442 reads: "The board of supervisors in each county, prior to closing a county hospital or other county medical facility, eliminating any area of service in a county hospital or other county medical facility or reducing the level of services provided to indigents as of January 1, 1975, or prior to leasing, selling, or in any way transferring the management of a county hospital or other county medical facility, shall file with the State Department of Health Services and the appropriate areawide voluntary health planning agency the following: [¶] (a) A description of the county's existing facilities and services, the board's proposal for changing those facilities or services, including a plan for providing the eliminated services or facilities through alternative means. [¶] (b) A copy of any contracts, agreements, or arrangements with any facility or individual to provide services to indigent people. [¶] These documents shall be filed by the county at least 60 days prior to the effective date of such plan for providing the eliminated services or facilities, or any such contracts, agreements or arrangements. [¶] The State Department of Health Services shall file annually with the Legislature a report of all such closings of facilities and reductions or elimination of services."

Section 1442.5 provides in pertinent part: "Prior to closing a county facility, eliminating or reducing the level of services provided, or prior

to the leasing, selling, or transfer of management, the board shall provide public notice, including notice posted at the entrance to all county health care facilities, of public hearings to be held by the board prior to their decision to proceed. Such notice shall be posted not less than 90 days prior to such public hearings. [¶] The board shall make findings based on these hearings that their proposed action will not have a detrimental impact on the health care needs of the indigents of the county. Such findings shall be included as part of the official public hearing record. . . ."

When the board received Darley's demand it rescinded the May 17 resolution. It then filed documents with the state and, on August 23 and 25, 1977, held some six hours of hearings on the future of Fair Oaks. The hearings were tape recorded but not officially transcribed, and studies of the county health care system as well as staff comments were placed in the record. At the conclusion of the hearings the board voted to reduce service, effective September 19, 1977. On September 20 the board adopted a formal "no detriment to indigents" finding and further resolved to close Fair Oaks entirely on December 31, 1977, unless federal funds were forthcoming.[1]

On September 14, acting on behalf of indigent residents of the Fair Oaks community, Darley commenced a mandate action to overturn the board's decision. He alleged that the board's evidence and findings on detrimental impact and its attempted compliance with section 1442 were insufficient.

At trial on September 30, the court declined to accept a certified, raw, tape recording of the board's hearings. It also refused a continuance to permit plaintiff to transcribe the tapes, ruling that he had had ample time to do so.

Accordingly, in its findings and conclusions the court determined that plaintiff had not sustained his burden of producing an adequate administrative record. It therefore invoked the presumption of official regularity, holding that, absent an adequate record, it could assume the board's answer, denying all impropriety, to be true. The court then formally found that the board had complied with all applicable statutes and that closure of Fair Oaks or reduction of its services would have no

---

[1]Federal funds were made available, and Fair Oaks has therefore continued to operate at a reduced level of service.

detrimental impact on the health care needs of the indigents of San Mateo County. On that basis, mandate was denied.

■ Plaintiff contends the trial court abused its discretion by refusing either to accept the certified tape recordings of the hearings or to grant a continuance to permit plaintiff to transcribe them. We agree.

■ Tape recordings, properly authenticated, are admissible as "writings." (Evid. Code, § 250.) They sometimes may be an adequate means to review administrative proceedings even if untranscribed. (See *Woodard* v. *Personnel Commission* (1979) 89 Cal.App.3d 552, 558-559 [152 Cal.Rptr. 658].)

■ Plaintiff, an indigent, had sought and failed to have a written transcript prepared by the county.[2] His own attempt to reproduce the tapes in written form would have involved considerable time and expense. He therefore acted reasonably in seeking a more direct and efficient alternative. An accelerated trial date effectively prevented a settled statement about the hearings. Plaintiff's offer of raw tapes constituted a good faith effort to provide a record and satisfied his initial burden to do so. (Cf. *Alford* v. *Pierno* (1972) 27 Cal.App.3d 682, 691 [104 Cal.Rptr. 110]; *Ward* v. *County of Riverside* (1969) 273 Cal. App.2d 353, 358-359 [78 Cal.Rptr. 46] [tape available but apparently not offered].)

That the raw tapes were properly offered in evidence, however, does not necessarily mean that the court was compelled to accept them in that form. A court may require transcription where it is necessary to facilitate review. Here, six hours of sometimes unintelligible recording were involved. There had been no agreement on the meaning of unclear portions. There were no means by which particular passages could be cited and located quickly. Review was possible only by the unacceptable process of winding and rewinding the reels to find crucial material. The court understandably needed something in writing.

Nonetheless, was denial of plaintiff's motion for a continuance to transcribe an abuse of discretion? Avoidance of hearing on the merits of a lawsuit is disfavored. *Woodard* v. *Personnel Commission, supra,* 89 Cal.App.3d 552, 560-561, held that an indigent petitioner's mandamus

---

[2]The order to show cause drafted by plaintiff's counsel called upon the county to produce a written record. That portion of the order was stricken by the trial court.

remedy cannot be foreclosed simply because the agency contends that review is impossible without stipulated facts or a full hearing record. In such cases the agency may be compelled to cooperate in providing one or the other.

Here, as in *Woodard*, defendants effectively foreclosed review by blocking plaintiff's efforts to produce the hearing record and then urging that relief could not be granted without it. If *Woodard* requires agency cooperation in those circumstances it certainly demands solicitude for an indigent plaintiff's good faith attempt to provide an adequate record on his own. A continuance for that purpose should not be denied unless the court is satisfied the request is dilatory, abusive, or prejudicial to the rights of the opposing party. (Cf., *Lees* v. *Bay Area Air etc. Control Dist.* (1965) 238 Cal.App.2d 850, 854 [48 Cal.Rptr. 295] [no continuance to prepare transcript requested].)

Defendants urge that plaintiff was dilatory because he himself set the trial date, knew a written record was required,[3] and did nothing in the month after the tapes became available. The contention is unpersuasive.

The raw tapes were available after August 25, 1977. Suit commenced on September 14. The trial date was set in the order to show cause drafted by plaintiff's counsel and issued that same day. The hearing record was not complete until September 20, when the board made its formal finding of "no detriment." Defendants' answer, disputing the facts, was filed on September 29. Trial began the next day, and the court refused both the tapes and a continuance.

Understandably, plaintiff sought prompt resolution of the Fair Oaks question, and speed became particularly important when the court denied a temporary stay of the service-reduction order. An essential portion of the hearing record—the formal finding at the heart of plaintiff's challenge—was not available until 10 days before the scheduled trial date. Plaintiff appeared on the scheduled date ready to go forward and offered evidence that the trial court might have accepted. We can hardly deem his actions dilatory.

On the other hand, a delay to prepare a transcript would not have harmed defendants. During the transcription period, Fair Oaks could

---

[3]We reject defendants' contention that the trial court notified plaintiff of his obligation to provide a written record by denying his request that the county do so.

have been allowed to operate at the reduced levels prescribed by the board.

Under those circumstances the trial court was required, at a minimum, either to accept the tapes in raw form or to grant a reasonable continuance for preparation of a written transcript. It abused its discretion when it rejected both alternatives. Accordingly, it erred by deciding the case without evidence of the board proceedings and by upholding the board's decision solely on grounds that plaintiff had presented an inadequate record. We must therefore reverse.

Plaintiff's extensive arguments about the adequacy of the evidence and the findings, and the appropriate scope of judicial review, are premature. Because the trial court denied mandate solely on the ground that the record was inadequate, it never reached those additional issues. They are most properly resolved on the more complete record the court will confront in any retrial.

The judgment is reversed.

Bird, C. J., Tobriner, J., Mosk, J., Clark, J., Richardson, J., and Manuel, J., concurred.