[No. A111455. First Dist., Div. Four. Jan. 16, 2007.]

GREGORY W. BRESLIN et al., Plaintiffs and Appellants, v.
CITY AND COUNTY OF SAN FRANCISCO et al., Defendants and
Respondents.

COUNSEL

Allen Matkins Leck Gamble & Mallory, Robert R. Moore, Michael J. Betz, Gary Sloboda for Plaintiff and Appellant Gregory W. Breslin.

Freya Horne for Plaintiff and Appellant Michael Moran.

James P. Collins for Plaintiff and Appellant Peter Siragusa.

Peter Furst for Plaintiff and Appellant James Zerga.

Gordon-Creed, Kelley, Holl & Sugerman, Geoffrey Gordon-Creed and Jeremy Sugerman for Defendants and Respondents.

OPINION

**REARDON, Acting P. J.**—This appeal poses important questions about the application and interpretation of the one-year statute of limitations for bringing disciplinary charges against police officers. (See Gov. Code,[1] § 3304, subd. (d) (hereafter section 3304(d)).)[2] In this matter, the trial court denied a petition for writ of mandate and for injunctive relief filed by appellant

---

[1] All statutory references are to the Government Code unless otherwise indicated.

[2] This provision has been amended twice since the 1998 incident, but none of the revisions affects the substance of the parts of this provision that apply in this matter. (See Stats. 1997,

Gregory W. Breslin and three other San Francisco police officers who sought dismissal of police disciplinary charges pending against them before respondent San Francisco Police Commission (commission). The officers appeal the order denying issuance of a writ of mandate and denying the request for injunctive relief,[3] contending that the disciplinary charges are time-barred. (See § 3304.) In November 2005, we granted the officers' petition for writ of supersedeas staying the underlying disciplinary proceedings until the appeal was resolved.

We find that three statutory exceptions to the one-year limitations period were erroneously applied in this matter. As a result, we conclude that the disciplinary charges were not timely filed against any of the four officers. Thus, we reverse the trial court order denying mandamus relief and remand for further proceedings.

## I. FACTS

### A. *Incident*

On May 13, 1998, four San Francisco police officers were conducting a surveillance in an attempt to locate a known fugitive, Raymondo Cox. The officers—appellants Gregory W. Breslin, Michael Moran, Peter Siragusa and James Zerga—observed Cox leave an apartment complex and enter a vehicle driven by Michael Negron. Seventeen-year-old Sheila DeToy was also a passenger in the car. The officers attempted to stop the car as it left the apartment complex. As Negron evaded the officers, Breslin and Moran fired several shots into the car. One of Breslin's bullets struck and killed Sheila DeToy.

### B. *Investigation and Charges*

Immediately after the incident, respondent San Francisco Police Department (department) and the district attorney conducted investigations of the incident and the four officers' involvement in it. (See S.F. Police Dept. Gen. Order No. 8.11.) The officers maintained that Breslin acted in self-defense after Negron attempted to run him down with the vehicle.

On June 10, 1998, the San Francisco Office of Citizen Complaints (OCC)[4] received a complaint about the May 13, 1998 incident from an eyewitness.

---

ch. 148, § 1; Stats. 1998, ch. 786, § 1; Stats. 2004, ch. 405, § 2.) For convenience, this opinion cites the current version of section 3304.

[3] See part II., *post.*

[4] The San Francisco City Charter imposes on the OCC the duty to investigate complaints of police misconduct and to recommend disciplinary action to the chief of police. (See S.F. Charter, art. IV, § 4.127.)

Later that month, the OCC sought department documents pertaining to the incident. It began its own investigation, interviewing witnesses and reviewing initial police reports received in response to its first request for department documents. Eyewitnesses disputed the officers' self-defense claim. Some of the physical evidence and other witness testimony was consistent with the eyewitnesses' testimony.

On July 10, 1998, the OCC obtained from the district attorney transcripts of the officers' interviews with department investigators. The OCC submitted two more requests for documents from the department in October and December 1998.

On February 10, 1999, the district attorney announced that it had completed its criminal investigation of the four officers and had concluded that no criminal conduct had occurred. Meanwhile, criminal charges had been filed against Negron and Cox stemming from the shooting incident. In February 1999, the four officers testified at the preliminary hearing that Breslin acted in self-defense.[5] In March 1999, an information was filed against Negron and Cox including charges stemming from the May 1998 incident. The information charged Negron with the murder of Sheila DeToy, as well as the attempted murder of and assault with a deadly weapon against Breslin. On March 30, 1999, Negron pled guilty inter alia to the involuntary manslaughter of DeToy and assault with a deadly weapon—specifically, an automobile—against Breslin. (See Pen. Code, §§ 192, subd. (b), 245, subd. (a)(1).) Cox pled guilty to a drug charge. (See Health & Saf. Code, § 11351.) On April 27, 1999, after Cox and Negron were sentenced, their attorney first authorized them to be interviewed by the OCC.

On May 13, 1999, Diane DeToy—the mother of Sheila DeToy—filed a civil rights and wrongful death action against the city, Breslin and several unnamed Doe defendants. (*DeToy v. City and County of San Francisco* (Super. Ct. S.F. City and County, 1999 No. 303475); see fn. 6, *post.*) In June 1999, the city attorney—acting on behalf of the city and Breslin—answered the complaint, asserting inter alia that Negron and Cox were solely responsible for Sheila DeToy's death. The action was removed to federal district court. (*Detoy v. City and County of San Francisco* (N.D. Cal.) No. C99-3072 CRB.)

During 1999, the OCC investigation continued. In March 1999, the OCC interviewed four more witnesses. By September 1999, the OCC had not received all the documents that it sought from the department. It made a fourth request for documents from the department that month. The OCC interviewed Negron and Cox on September 28 and October 5, 1999, respectively.

---

[5] OCC officials attended the preliminary hearing and later reviewed a transcript of this proceeding.

During October 1999, the OCC received the first two sets of documents it sought from the department. On January 5, 2000, the OCC received its final documents from the department. At this time, the OCC had obtained the complete department file on this matter.

From March through June 2000, the OCC interviewed seven police officers, including the four appellants, who again asserted that Breslin had acted in self-defense. The OCC interviewed yet another officer in September 2000. In all, the OCC interviewed 16 witnesses—the four accused officers, Negron, Cox, six citizen witnesses and four other officers—and reviewed 78 tapes and transcripts and more than 7,000 pages of documents.

In November 2000, the civil action filed by Diane DeToy against the city and Breslin was settled. On December 5, 2000, the federal district court ordered that the civil action be dismissed with prejudice.[6] On February 21, 2001, the commission adopted procedures for use when the chief of police and the OCC were unable to agree about whether to bring disciplinary charges against a police officer.

On March 30, 2001, the OCC formally completed its investigation[7] and notified all four officers of its preliminary findings.[8] It forwarded the case to the chief of police—then Fred Lau—recommending that sustained allegations against all four officers be submitted to the commission. The report recommended that charges be filed against Breslin and Moran for discharging their weapons without justification; against Zerga for neglect of duty for filing an inaccurate incident report; and against all four officers for conduct reflecting discredit on the police department for misrepresenting the circumstances of the shooting in interviews with the department and the OCC, and in their testimony at the Cox and Negron preliminary hearing. (See S.F. Police Dept. Gen. Order Nos. 2.01 (rules 9, 21), 5.01, 5.02.)

On April 16, 2001, the OCC submitted its final report to the department and Chief Lau. The commission also received the case on that date. Over the

---

[6] The December 5, 2000 dismissal order was conditional. It allowed either party to object to dismissal if the consideration for the settlement was not delivered within 60 days. Both parties requested dismissal with prejudice on January 16, 2001. A formal dismissal order was entered on January 18, 2001, in accordance with this request, followed by entry of a final dismissal order on March 6, 2001. Although it is unclear which order actually ended this litigation, we assume arguendo that the civil action ended on December 5, 2000.

[7] When the OCC has completed an investigation and has found that the alleged misconduct was established by a preponderance of evidence, it must transmit its investigation and findings to the chief of police for review. (S.F. Police Dept. Gen. Order No. 2.04.)

[8] The OCC must provide notice of this action to the officers under investigation. (S.F. Police Dept. Gen. Order No. 2.04.)

course of the next three and one-half months,[9] Chief Lau reviewed thousands of documents in the matter. The OCC and Chief Lau considered and negotiated what would constitute appropriate discipline in this matter. On August 30, 2001, Chief Lau formally notified the OCC that he disagreed with its recommendations.

From September 2001 through February 2002, the OCC and the department engaged in informal discussions and negotiations, but were unable to reach an agreement about what disciplinary charges should be filed against the four officers. On March 5, 2002, the OCC sent verified complaints to Chief Lau charging all four officers.

Again, the department and the OCC attempted to negotiate matters in order to resolve their differences. The OCC believed that Chief Lau would support filing a single charge against Breslin for use of unnecessary force. Acting on that belief, the OCC withdrew its original charges and, on May 6, 2002, submitted a single charge against Breslin. However, Chief Lau did not act on the revised recommended charge.

On June 7, 2002, the OCC urged the commission to order Chief Lau to file the original charges against all four officers. On June 26, 2002, Chief Lau wrote a letter to the commission opposing the filing of the verified complaints, reasoning that Negron alone was responsible for Sheila DeToy's death and that Breslin acted in self-defense. That day, the commission recommended that Chief Lau serve the original verified charges against all four officers. On June 28, 2002, Chief Lau filed the original disciplinary charges against the four officers. Between June 28 and July 9, 2002, each of the four officers was formally served with notice of the disciplinary charges.[10]

## C. Administrative and Trial Court Proceedings

On September 10, 2003, the four officers filed a motion to dismiss the charges with the commission, alleging that they were filed outside the one-year statute of limitations. (See § 3304.) The OCC opposed the motion. On December 10, 2003, the commission denied the motion to dismiss, finding that periods of tolling and extensions of the one-year statute of limitations

---

[9] Once the OCC has transmitted the investigation and findings, the chief of police has 60 days from receipt of the OCC investigation and findings to conduct a review and recommend disciplinary action. If this is not possible, the chief of police must request an extension of time from the commission, stating the reason for the requests. The officers are entitled to receive notice of this request for an extension of time. (S.F. Police Dept. Gen. Order No. 2.04.)

[10] San Francisco police officers are not subject to disciplinary action for misconduct except after a hearing before the commission initiated by the filing of a verified complaint setting forth the acts forming the basis of alleged misconduct. (See S.F. Charter, appen. A, § A8.343.)

rendered timely the filing of all disciplinary charges against the four officers. (See § 3304(d)(1), (3), (4), (6).)

On March 9, 2004, Breslin, Zerga, Moran and Siragusa filed a verified petition for writs of mandate and administrative mandate, seeking to have the disciplinary charges dismissed as untimely. The petition also alleged causes of action for injunctive and declaratory relief. The officers brought this action against respondents city, department and commission.[11] The commission answered the petition in July 2004.

In January 2005, the officers moved for a writ of mandate. The trial court conducted a hearing on the petition for writ of mandate in April 2005. On June 17, 2005, it denied the request for a writ of mandate. The denial order was filed on June 20, 2005. Notice of entry of the order was mailed on June 21, 2005.

## II. APPEALABILITY OF ORDER

The four officers filed a timely notice of appeal from the order denying issuance of a writ of mandate. They do not explain in their opening brief why the order denying issuance of a writ of mandate is an appealable order. (See Cal. Rules of Court, rule 8.204(a)(2)(B).) At one time, it was thought to be settled law that an order denying a writ of mandate was an appealable order unless the trial court contemplated further orders or action on the petition. (*Elmore v. Imperial Irrigation Dist.* (1984) 159 Cal.App.3d 185, 190–191 [205 Cal.Rptr. 433]; see 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, §§ 97, 106, pp. 159–160 [final judgment in special proceeding is appealable], 169–170 [order denying writ of mandate is appealable as judgment in special proceeding].) However, recent California Supreme Court cases have disapproved this line of authority. (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 697–698 [107 Cal.Rptr.2d 149, 23 P.3d 43] (*Griset*); *Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 736–744 [29 Cal.Rptr.2d 804, 872 P.2d 143]; see *Superior Court v. County of Mendocino* (1996) 13 Cal.4th 45, 52, fn. 5 [51 Cal.Rptr.2d 837, 913 P.2d 1046]; *Nerhan v. Stinson Beach County Water Dist.* (1994) 27 Cal.App.4th 536, 538–540 [33 Cal.Rptr.2d 10].) In this matter, the trial court order denied the petition for writ of mandate and the request for injunctive relief. It did not purport to rule on the other two causes of action—administrative mandate and declaratory relief— that were pled in the petition.

 Despite these facts, we are satisfied that the order before us constitutes a final judgment for the purposes of this appeal. A judgment is a final

---

[11] For convenience, the opinion refers to all three respondents as "the city."

determination of the rights of the parties. When we determine whether an adjudication is final and appealable, the substance and effect of the adjudication is determinative, not the form of the decree. When no issue is left for further consideration, the decree is final. (*Griset, supra,* 25 Cal.4th at p. 698.) In *Griset,* a unanimous California Supreme Court held that an appeal was taken from a judgment disposing of all causes of action even though there was no formal entry of judgment when the trial court completely resolved an allegation that was essential to all alleged causes of action. (See *id.* at pp. 698–699.)

This is precisely the situation in the case before us—the four officers appealed from an order effectively disposing of all four causes of action pled in the petition notwithstanding the lack of a formal judgment so stating. They assert as much in their filing about this appeal. (See Cal. Rules of Court, rule 8.100(f).) The trial court resolved the statute of limitations issue essential to all four alleged causes of action such that the officers cannot prevail on any of them. In these circumstances, we treat the trial court's order denying issuance of a writ of mandate as the equivalent of a final judgment on all of these causes of action. (See *Griset, supra,* 25 Cal.4th at pp. 698–699.) As the appeal from this order was timely filed, we may consider the merits of the issues that the four officers raise.

## III. PRELIMINARY MATTERS

### A. *Statutory Overview*

The officers were served with disciplinary charges between June 28 and July 9, 2002—more than four years after the OCC received the citizen complaint on June 10, 1998. On appeal, the four officers contend that the one-year statute of limitations bars these disciplinary proceedings. They reason that no statutory exception to that one-year limitations period applies, and seek the dismissal of the disciplinary charges against them. (See § 3304(d).)

The one-year statute of limitations is set out in section 3304, which is part of the Public Safety Officers Procedural Bill of Rights Act. (See *Sulier v. State Personnel Bd.* (2004) 125 Cal.App.4th 21, 24 [22 Cal.Rptr.3d 615] (*Sulier*); see also § 3300 et seq.) The act is primarily a labor relations statute, cataloging the basic rights and protections that must be afforded to all peace officers by the public entities that employ them. (*Sulier, supra,* 125 Cal.App.4th at p. 26; *Alameida v. State Personnel Bd.* (2004) 120 Cal.App.4th 46, 63 [15 Cal.Rptr.3d 383]; *Runyan v. Ellis* (1995) 40 Cal.App.4th 961, 964 [47 Cal.Rptr.2d 356].) Effective law enforcement depends on the maintenance of stable public employer-public safety employee relations—relations that

benefit the public as well as public safety officers. (*Shoemaker v. Myers* (1992) 2 Cal.App.4th 1407, 1421 [4 Cal.Rptr.2d 203]; see *Pasadena Police Officers Assn. v. City of Pasadena* (1990) 51 Cal.3d 564, 572 [273 Cal.Rptr. 584, 797 P.2d 608].)

▮ One protection codified in section 3304 is the speedy adjudication of conduct that could result in discipline. (*Parra v. City and County of San Francisco* (2006) 144 Cal.App.4th 977, 988 [50 Cal.Rptr.3d 822] (*Parra*); *Sulier, supra*, 125 Cal.App.4th at p. 26; *Alameida v. State Personnel Bd., supra*, 120 Cal.App.4th at p. 63; *Runyan v. Ellis, supra*, 40 Cal.App.4th at p. 964.) The act provides that disciplinary charges against a public safety officer must be filed within one year, subject to certain statutory exceptions. (§ 3304(d).) The act itself was enacted in 1976, but the one-year statute of limitations for receiving notice of proposed disciplinary charges set out in section 3304(d) did not take effect until 1998. (*Jackson v. City of Los Angeles* (2003) 111 Cal.App.4th 899, 908 [4 Cal.Rptr.3d 325] (*Jackson*); *California Correctional Peace Officers Assn. v. State of California* (2000) 82 Cal.App.4th 294, 304 [98 Cal.Rptr.2d 302]; see *Parra, supra*, 144 Cal.App.4th at p. 988, fn. 7.) It seeks to balance competing interests—the public interest in maintaining the integrity and efficiency of the police force with the individual officer's interest in receiving fair treatment. (*Jackson, supra*, at p. 909; see *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 396 [87 Cal.Rptr.2d 453, 981 P.2d 79].)

The statute allows for tolling or extension of the one-year limitations period under specified circumstances. (See § 3304(d).) The application of this provision is not merely a municipal issue, but a matter of statewide concern. (§ 3301; *Jackson, supra*, 111 Cal.App.4th at pp. 906–908; see *Baggett v. Gates* (1982) 32 Cal.3d 128, 139–140 [185 Cal.Rptr. 232, 649 P.2d 874]; *Shoemaker v. Myers, supra*, 2 Cal.App.4th at p. 1421.) The meaning of these tolling and extension provisions was at issue before the commission, in the trial court, and in this appeal.

## B. *Commission and Trial Court Findings*

The shooting that prompted the disciplinary charges occurred on May 13, 1998. The OCC received its citizen complaint on June 10, 1998. The commission found that the statutory one-year limitations period was tolled from June 10, 1998,[12] until February 10, 1999, while the criminal investigation into the officers' conduct was pending. (See § 3304(d)(1).) It found that the one-year statute of limitations began to run from February 10, 1999, and

---

[12] The trial court's order recites that the statute of limitations was tolled beginning on January 10, 1998. We deem this to be a clerical error, as the evidence establishes that the citizen complaint was not filed until June 10, 1998.

continued running until May 13, 1999, when Diane DeToy filed her civil action against the city and Breslin. The commission found that the statute of limitations was tolled during this period for all four officers—not just Breslin—from May 13, 1999, until December 5, 2000, when the civil action was dismissed. At this point, the commission found, the statute of limitations began to run again. (See § 3304(d)(6).) It concluded that the OCC investigation was completed on March 30, 2001, at which time the officers were notified of its preliminary findings.[13] In addition to the criminal investigation and civil tolling provisions, the commission applied the multiple-employee and multijurisdictional extension provisions of section 3304, finding that a 10-month extension of the limitations period was reasonable. (See § 3304(d)(1), (3), (4), (6).) It found that the combined effect of the tolling provisions and extensions of the limitations period rendered timely the June and July 2002 charges against the four officers.

The trial court agreed with the commission's legal interpretation of section 3304, concluding that its rulings were not arbitrary, erroneous or contrary to the weight of evidence. It found that the criminal investigation and civil lawsuit tolling provisions applied from the date on which the June 10, 1998 complaint was filed through February 10, 1999, and from May 13, 1999, through December 5, 2000, respectively. (See § 3304(d)(1), (6).) (See fn. 6, *ante.*) It applied the civil lawsuit tolling provision to all four officers, although only Breslin was named as a party to that action, noting that the other three officers could have been named as Doe defendants if the lawsuit had not been settled. The trial court applied the commission's interpretations of the multijurisdictional and multiple-employee extensions, and upheld the commission's conclusion that a 10-month extension of time in this matter was reasonable under these two provisions. (See § 3304(d)(3), (4).)

## C. *Standard of Review*

As a preliminary matter, the parties disagree about the standard of review to be applied. Much of their dispute centers on the standard to be applied to disputed *factual* issues. To the extent that the issues presented in this appeal present *legal* issues involving the interpretation of the language of section 3304, the law is settled. On these legal issues, the trial court was required to exercise its independent judgment, while examining the administrative record for any errors of law committed by the commission. (See *Merrill v.*

---

[13] The officers argue that there was no evidence of any investigative activity in this matter after September 2000 and would have us set an earlier date—instead of March 30, 2001—as the date on which the OCC investigation was complete. This is a factual issue. The commission made specific findings on this matter, and the trial court upheld those findings in a general manner. In light of our determination that the disciplinary charges were not timely filed under the facts asserted by the city, we need not determine when the investigation was complete.

*Department of Motor Vehicles* (1969) 71 Cal.2d 907, 914 [80 Cal.Rptr. 89, 458 P.2d 33]; see also *Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 811 [85 Cal.Rptr.2d 696, 977 P.2d 693] (*Fukuda*) [independent judgment exercised on both legal and factual issues].) On appeal, we are not bound by any legal interpretation made by the commission or the trial court. Instead, we make an independent review of any questions of law necessary to the resolution of this matter on appeal. (See *Burden v. Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672]; *Parra, supra*, 144 Cal.App.4th at p. 992; *Jackson, supra*, 111 Cal.App.4th at p. 902; *Runyan v. Ellis, supra*, 40 Cal.App.4th at p. 964; *Binkley v. City of Long Beach* (1993) 16 Cal.App.4th 1795, 1806 [20 Cal.Rptr.2d 903], cert. den. (1994) 510 U.S. 1194 [127 L.Ed.2d 653].) Statutory interpretation is a clear question of law for our determination anew on appeal. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956] (*Shamrock*); *Riveros v. City of Los Angeles* (1996) 41 Cal.App.4th 1342, 1349–1350 [49 Cal.Rptr.2d 238]; see *Merrill v. Department of Motor Vehicles, supra*, 71 Cal.2d at p. 917.)

On factual issues, the trial court had a duty to weigh the evidence and to exercise its independent judgment on the facts. In so doing, it was assisted by the commission's work in sifting the evidence and making its findings, which came to the trial court with a strong presumption of correctness. (See *Fukuda, supra*, 20 Cal.4th at pp. 808, 811, 816–819; *Parra, supra*, 144 Cal.App.4th at p. 992; *Chamberlain v. Ventura County Civil Service Com.* (1977) 69 Cal.App.3d 362, 368 [138 Cal.Rptr. 155].) In the trial court, the officers had the burden of proof to show that the commission's decision was not supported by the weight of the evidence—that is, that the decision was not supported by the preponderance of the evidence. (See *Fukuda, supra*, 20 Cal.4th at pp. 808, 817, 819–822; *Chamberlain v. Ventura County Civil Service Com., supra*, 69 Cal.App.3d at p. 368; see also Code Civ. Proc., § 1094.5, subd. (c) [administrative mandate standard].) The presumption of correctness is the starting point for the trial court's review, but this rebuttable presumption may be overcome by the evidence. When applying the independent judgment test, the trial court may reweigh the evidence and substitute its own findings for those of the commission, after first giving due respect to the commission's findings. (See *Fukuda, supra*, 20 Cal.4th at p. 818; *Drummey v. State Bd. of Funeral Directors* (1939) 13 Cal.2d 75, 86 [87 P.2d 848].) In its statement of decision, the trial court acknowledged applying this standard of review.

When—as in this matter—the trial court reviews the commission's decision under the independent judgment standard of review and we review this ruling on appeal, we determine whether the record provides substantial

evidence supporting the trial court's factual findings.[14] (*Fukuda, supra,* 20 Cal.4th at p. 824; *Parra, supra,* 144 Cal.App.4th at p. 992; *Jaramillo v. State Bd. for Geologists & Geophysicists* (2006) 136 Cal.App.4th 880, 889 [39 Cal.Rptr.3d 170] (*Jaramillo*); *Jackson, supra,* 111 Cal.App.4th at p. 902; *Riveros v. City of Los Angeles, supra,* 41 Cal.App.4th at p. 1350; see also Code Civ. Proc., § 1094.5, subd. (c).) Applying the substantial evidence test on appeal, we may not reweigh the evidence, but consider that evidence in the light most favorable to the trial court, indulging in every reasonable inference in favor of the trial court's findings and resolving all conflicts in its favor. (*Moran v. Board of Medical Examiners* (1948) 32 Cal.2d 301, 308 [196 P.2d 20]; *Jaramillo, supra,* 136 Cal.App.4th at p. 889.) The question on appeal is whether the evidence reveals substantial support—contradicted or uncontradicted—for the trial court's conclusion that the weight of the evidence supports the commission's findings of fact. (See, e.g., *Yakov v. Board of Medical Examiners* (1968) 68 Cal.2d 67, 72–73 [64 Cal.Rptr. 785, 435 P.2d 553].) We uphold the trial court's findings unless they so lack evidentiary support that they are unreasonable. We may not uphold a finding based on inherently improbable evidence or evidence that is irrelevant to the issues before us. (See *Jaramillo, supra,* 136 Cal.App.4th at p. 889.)

## IV. TOLLING OF STATUTE OF LIMITATIONS

### A. *During Criminal Investigation*

■ First, the officers contend that the criminal investigation tolling exception to the statute of limitations did not apply to render the filing of these disciplinary proceedings timely. The act *requires* the tolling of the one-year statute of limitations while a criminal investigation is pending if the misconduct is the subject of that investigation. (See § 3304(d)(1); *Parra, supra,* 144 Cal.App.4th at p. 993, fn. 10.) The officers argue that the criminal investigation tolling provision is "not applicable" at all or is "irrelevant" to this matter, but we find these contentions to be disingenuous.[15] Whether the application of a *single* tolling provision renders the service of disciplinary charges timely is not the question before us. Instead, we consider whether those charges were timely served considering *all* applicable tolling periods and reasonable extensions.

The facts relating to the criminal investigation tolling provision are undisputed. From May 13, 1998, until February 10, 1999, the district attorney

---

[14] Substantial evidence review in an administrative mandamus case includes within it the duty to determine whether the administrative body committed errors of law in applying the facts before it. (See *City and County of San Francisco v. Board of Permit Appeals* (1989) 207 Cal.App.3d 1099, 1111 [255 Cal.Rptr. 307].)

[15] We note that the four officers did not dispute this issue before the commission or the trial court.

conducted a criminal investigation into the conduct of all four of the officers involved in this shooting incident. The same incident was the subject of the June 10, 1998 complaint to the OCC. As all the requirements of the criminal investigation tolling provision are met, we find that this statute *required* that the one-year period for filing disciplinary charges against each of the four officers be tolled from the time that the OCC investigation began on June 10, 1998, through February 10, 1999, when the criminal investigation formally ended. (See § 3304(d)(1); see also *Parra, supra,* 144 Cal.App.4th at pp. 993–995.)

■ The time within which an act provided by law is to be done is computed by excluding the first day and including the last, unless that last day is a holiday. (Code Civ. Proc., § 12.) Thus, the one-year statute of limitations did not begin to run until February 11, 1999, the day after all four officers were notified that the criminal investigation was complete.

## B. *During Civil Action*

### 1. *Nexus Requirement*

The officers also raise various challenges to the application of the civil litigation tolling provision. Under this provision, the one-year statute of limitations must be tolled during the time period that a civil action is pending if the investigation involves a matter in civil litigation in which the public safety officer is named as a party defendant. (See § 3304(d)(6).) On appeal, the officers raise three challenges to the application of this provision.

■ First, they contend that the civil action tolling provision does not apply because the civil action filed by Diane DeToy had no actual effect on the OCC investigation. This issue presents a question of statutory interpretation—a question of law for us to determine anew on appeal. (See *Shamrock, supra,* 24 Cal.4th at p. 432; *Riveros v. City of Los Angeles, supra,* 41 Cal.App.4th at pp. 1349–1350.) When construing the meaning of the language of section 3304, we apply basic principles that apply in all statutory construction cases. We seek to ascertain the Legislature's intent so that we may effectuate the law's purpose. Our goal is to interpret the language of the statute—not to insert what has been omitted or omit what has been inserted. We look first to the language of the statute itself, read as a whole, seeking to harmonize all parts of the statutory scheme. If the words contained in the statute are reasonably free from ambiguity and uncertainty, we look no further than those words to ascertain the provision's meaning. (*Sulier, supra,* 125 Cal.App.4th at p. 26; see *Burden v. Snowden, supra,* 2 Cal.4th at p. 562.) Only if the words are ambiguous or unclear may we turn to extrinsic aids to help us determine the Legislature's intent. (*Burden v. Snowden, supra,* at p. 562.)

 The pertinent language of section 3304 is not ambiguous or unclear. It provides that the one-year statute of limitations must be tolled if the investigation *involves a matter in civil litigation*. (See § 3304(d)(6).) Thus, the only nexus required to trigger the civil action tolling provision is that the investigation and civil action *involve* the same underlying incident. (See *ibid.*)

Those requirements have been satisfied in this matter. The same incident—the May 13, 1998 shooting—was the subject of both the OCC investigation and the DeToy civil action. The statutory language does not require that the OCC investigation into that matter actually be affected by the civil action, nor does it require that the OCC be aware of the action. It merely requires that a civil action be filed involving the underlying incident as the OCC investigation.[16] (See § 3304(d)(6).) We have no power to graft onto the language of section 3304 the additional nexus that the officers would require. (See *Sulier, supra*, 125 Cal.App.4th at p. 26.)

### 2. Named Defendants

Three of the four officers—Moran, Siragusa and Zerga—also reason that even if the civil action tolling provision applies to Breslin, it does not apply to them because they were not named defendants in the DeToy civil action. The commission read this provision to apply to all officers involved in a single incident because DeToy could have amended her complaint to name the other three officers. It concluded that when an investigation involves multiple officers, the benefit to be gained from application of the tolling provision to Breslin would be undermined if the city was required to proceed with its OCC investigation because other officers were not named in the civil action. It declined to sever the Breslin investigation from that of the other three officers. The trial court upheld the commission's interpretation of the civil action tolling provision.

When a plaintiff is ignorant of the names of a defendant, the plaintiff may sue using a fictitious name for the defendant, amending the pleading when the defendant's true name is discovered. (Code Civ. Proc., § 474.) In this case, DeToy sued Breslin and multiple Doe defendants. She might have been able to amend her pleadings to plead the true names of Moran, Siragusa or Zerga, but she did not do so.[17] Although we must liberally construe the fictitious names statute to avoid the bar of the statute of limitations, the city cites no authority in which the plaintiff could have but did not actually exercise this

---

[16] The OCC investigation also involved a second level of allegations of acts of misconduct arising after but stemming from this incident.

[17] As Breslin's shooting forms the basis of that lawsuit, it is not clear whether or not DeToy could have named these three officers as defendants. Much of the misconduct alleged against them focused on conduct arising after the shooting. (See fn. 16, *ante.*)

authority by substituting true names for Does by amendment. (See, e.g., *Sobeck & Associates, Inc. v. B & R Investments No. 24* (1989) 215 Cal.App.3d 861, 866–867 [264 Cal.Rptr. 156]; *Olden v. Hatchell* (1984) 154 Cal.App.3d 1032, 1034–1037 [201 Cal.Rptr. 715]; see also Code Civ. Proc., § 474.) Thus, its cases are distinguishable on the facts.

The resolution of the issue before us turns on the meaning of the language of section 3304, not on the application of the fictitious names statute. The issue of what section 3304 means is a question of law for us to determine anew on appeal. (See *Shamrock, supra,* 24 Cal.4th at p. 432; *Riveros v. City of Los Angeles, supra,* 41 Cal.App.4th at pp. 1349–1350.) The civil action tolling provision specifically requires that the public safety officer be named a defendant in the civil action. (See § 3304(d)(6).) Moran, Siragusa and Zerga were *not* named as defendants in the DeToy civil action. The language of the civil action tolling provision clearly excludes those three officers from its application.

■ Despite the clear import of the statutory language, the city argues that it is impractical and against the public interest for it to pursue disciplinary charges against Moran, Siragusa and Zerga during the pendency of the civil action naming Breslin as a defendant. However, our role is not to rule on the wisdom of the Legislature's enactments, but to interpret the meaning of its words. (See *Estate of Horman* (1971) 5 Cal.3d 62, 77 [95 Cal.Rptr. 433, 485 P.2d 785], cert. den. *sub nom. Gumen v. California* (1972) 404 U.S. 1015 [30 L.Ed.2d 662, 92 S.Ct. 672].) The city's interpretation of the statute would require us to ignore the "named as a party defendant" language of section 3304(d)(6), rendering it surplusage. When we interpret a statute, we must avoid an interpretation that would render terms surplusage. Instead, we seek to give every word some significance, leaving no part useless or devoid of meaning. (*City and County of San Francisco v. Farrell* (1982) 32 Cal.3d 47, 54 [184 Cal.Rptr. 713, 648 P.2d 935]; *McLaughlin v. State Bd. of Equalization* (1999) 75 Cal.App.4th 196, 211 [89 Cal.Rptr.2d 295]; *AFL-CIO v. Deukmejian* (1989) 212 Cal.App.3d 425, 435 [260 Cal.Rptr. 479]; see *Cooley v. Superior Court* (2002) 29 Cal.4th 228, 249 [127 Cal.Rptr.2d 177, 57 P.3d 654].) If the Legislature had intended to apply the civil action tolling provision as broadly as the city urges us to find, it could have used broader language to include both named defendants and those who could be named as defendants in the civil action. It did not do so.

We are bound by the words of the Legislature's enactment. As the three officers were not named as defendants in the civil action, the civil action tolling provision does not apply to toll the limitations period for bringing disciplinary charges against Moran, Siragusa or Zerga during the pendency of the civil action against Breslin.

### 3. *Application of Tolling Provisions and Extensions*

Third, the officers argue that even if the statute of limitations was tolled during the time when the civil action was pending, that provision was "wholly inapplicable" to this matter because the disciplinary charges were filed more than one year from the date on which the civil action was settled. We disagree. (See pt. IV.A., *ante*.) That the application of the civil action tolling provision *alone* would not render the disciplinary charges timely does not render this provision inapplicable to the matter before us. We must consider all exceptions to the limitations period—that is, all tolling provisions and proper extensions—before we reach the ultimate question of the timeliness of the filing of the disciplinary charges. (See § 3304(d).)

## C. *Effect of Tolling Provisions*

### 1. *Breslin*

Having determined the proper scope and application of the two tolling provisions, we consider their specific impact on the one-year limitations period. For Breslin, the one-year period was tolled during the criminal investigation that had begun before the OCC complaint was filed. The district attorney's criminal investigation ended on February 10, 1999. The one-year statute of limitations began to run on the following day, February 11, 1999. (See Code Civ. Proc., § 12.) The limitations period for bringing disciplinary charges against Breslin was tolled again on May 13, 1999, when the DeToy civil action was filed.[18] (See § 3304(d)(6).) The period from February 11, 1999, to May 13, 1999, was 92 days. We assume that the limitations period began to run again as to Breslin when the December 5, 2000 order dismissing the civil action was entered.[19] Calculating the civil action and criminal investigation tolling periods, the one-year statute of limitations for filing disciplinary charges against Breslin would have expired 273 days later, on September 4, 2001.[20] The disciplinary charges against Breslin were not filed until July 1, 2002—approximately 10 months later. We will next consider whether the multiple-employee or multijurisdictional extension provisions justified a reasonable 10-month extension of the one-year statute of limitations.

---

[18] An action is commenced for statute of limitations purposes when a complaint is filed. (Code Civ. Proc., § 350; see 3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 662, pp. 845–846.)

[19] See footnote 6, *ante*.

[20] The commission actually set this date as September 3, 2001. However, as that day fell on a legal holiday—the first Monday in September—the time period was extended by law to the following day. (See Code Civ. Proc., §§ 12, 12a, subd. (a), 135; see § 6700, subd. (i).)

### 2. *Moran, Siragusa and Zerga*

The period for bringing disciplinary charges against Moran, Siragusa and Zerga differs from that for Breslin's charges. Their one-year limitations period also began to run on February 11, 1999, when the district attorney's criminal investigation was completed. The one-year limitations period began to run on February 11, 1999, and expired one year later on February 11, 2000. (See Code Civ. Proc., § 12.) The disciplinary charges were not filed against them until June 28, 2002 (Zerga), July 2, 2002 (Moran), and July 9, 2002 (Siragusa)—almost two and one-half years after the statute of limitations period—properly tolled—had expired. As such, only if the limitations period may properly and reasonably be extended for almost two and one-half years can the filing of disciplinary charges against Moran, Siragusa or Zerga be rendered timely. (See § 3304(d)(3), (4).)

## V. EXTENSIONS OF STATUTE OF LIMITATIONS

### A. *Multijurisdictional Extension*

■ The limitations period may be extended if the investigation is a multijurisdictional one requiring a reasonable extension for coordination of the involved agencies. (See § 3304(d)(3).) The commission applied this extension, finding that it would be sufficient to apply a reasonably required 10-month extension of the one-year limitations period. The trial court upheld the commission's application of this extension. On appeal, the officers contend that the multijurisdictional extension to the limitations period does not apply in this matter because the OCC and the department are not separate jurisdictions within the meaning of section 3304. As the meaning of the term "multijurisdictional" is a legal question of statutory interpretation, we determine this question anew on appeal. (See *Shamrock, supra*, 24 Cal.4th at p. 432; *Jackson, supra*, 111 Cal.App.4th at p. 902.)

When construing section 3304, our fundamental goal is to ascertain the Legislature's intent so that we may give effect to the law's purpose. In determining this intent, we first look to the words of the statute, giving them their usual, ordinary import. If the language is clear and unambiguous, we do not construe the statute, but apply this clear meaning. If the language of the statute is capable of more than one reasonable interpretation, we may consider extrinsic evidence to aid us in determining the actual legislative intent. (*California Correctional Peace Officers Assn. v. State of California, supra*, 82 Cal.App.4th at p. 308.)

The officers contend that no multijurisdictional investigation arose in this matter within the meaning of this extension provision because the department

and the OCC are not separate jurisdictions. (See § 3304(d)(3).) The city counters that the investigation was multijurisdictional because it required coordination between the department and the OCC, which it asserts are separate and independent agencies. We find both of these interpretations might be reasonable. As the term multijurisdictional is capable of more than one reasonable interpretation, we find that it is ambiguous. We may consider the legislative history of this provision in order to assist us in determining the Legislature's intended meaning. (See *Burden v. Snowden, supra,* 2 Cal.4th at p. 562; *California Correctional Peace Officers Assn. v. State of California, supra,* 82 Cal.App.4th at p. 308.)

In our review of the legislative history of the 1998 amendment to section 3304 adding the disputed term, we found a single statement that could assist us in determining the meaning of that term. In the bill analysis of the Assembly bill that amended section 3304 to add the one-year statute of limitations, the bill's author is quoted as noting the exceptions to this limitations period for "certain multi-jurisdictional and other investigations for which management has no reasonable control." (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1436 (1997–1998 Reg. Sess.) Apr. 15, 1997, p. 2.) Thus, we conclude that the issue of whether the investigation was a multijurisdictional one turns on whether one entity had reasonable control over the investigation.

■ The city argues that it did not have reasonable control over the OCC investigation, because the OCC is an independent entity free of department control. (See *San Francisco Police Officers' Assn. v. Superior Court* (1988) 202 Cal.App.3d 183, 185, 191 [248 Cal.Rptr. 297] [OCC is neutral part of department].) However, this reasoning does not address the issue before us. We are not concerned with whether the OCC is free of *department* control, but whether or not the OCC and the department are under the common control of a single entity. The San Francisco City Charter charges the commission with management of both the department and the OCC. (See S.F. Charter, art. IV, §§ 4.109, 4.127; *Parra, supra,* 144 Cal.App.4th at p. 982; see also *San Francisco Police Officers' Assn. v. Superior Court, supra,* 202 Cal.App.3d at p. 186 [OCC].) For example, the commission has the power to remove the OCC director and the chief of police. (See S.F. Charter, art. IV, §§ 4.109, 4.127.)

In our view, the charter establishes that the commission had reasonable control over both the OCC and the department. It had the authority to compel them to coordinate their efforts in a manner that would have allowed the disciplinary charges against the four officers to be filed in a timely manner. In fact, during the pendency of this matter, the commission adopted procedures to be used in cases in which the OCC and the chief of police disagree on

whether disciplinary charges should be brought against an officer. (See S.F. Police Com. Res. No. 25-01.) These procedures reference the limitations period set out in section 3304(d) and appear intended to assure that police disciplinary charges are filed within the time requirements specified by state law. In the matter before us, the OCC and the department did not follow these rules. Their failure to do so does not constitute a reason to extend the limitations period for filing disciplinary charges against the four officers; it is the evil that section 3304 seeks to avoid.

A second reason supports this interpretation. If we construe a multijurisdictional investigation as one not limited in its application to outside agencies that are substantially independent of the city, extensions could be authorized in a manner that could defeat the purposes of the statute. (See *California Correctional Peace Officers Assn. v. State of California, supra*, 82 Cal.App.4th at p. 308.) Such an interpretation would violate basic principles of statutory construction, which seeks to give effect to the statutory intent, not to defeat its purpose. (*Sulier, supra*, 125 Cal.App.4th at p. 26; see *Burden v. Snowden, supra*, 2 Cal.4th at p. 562.)

One other consideration also bears on our conclusion. The lack of coordination between the OCC and the department turns in part on the manner in which the *local* city charter organizes its police. However, the meaning and application of section 3304(d) is a matter of *statewide* concern. (§ 3301; *Jackson, supra*, 111 Cal.App.4th at pp. 906–908; see *Baggett v. Gates, supra*, 32 Cal.3d at pp. 139–140; *Shoemaker v. Myers, supra*, 2 Cal.App.4th at p. 1421.) A determination of the meaning of this statewide provision in a manner that turns on purely local concerns would be improper. As we find that the commission had reasonable control over the OCC and the department, we conclude that the multijurisdictional investigation extension codified in section 3304(d)(3) does not apply to the matter before us. We cannot uphold any extension of the limitations period on this basis.

B. *Multiple-employee Extension*

1. *Statutory Requirements*

▮ This finding does not end our inquiry. The commission and the trial court also applied the multiple-employee investigation extension, allowing the one-year limitations period to be extended if the investigation involves more than one employee[21] and requires a reasonable extension. (See § 3304(d)(4); see also *Parra, supra*, 144 Cal.App.4th at pp. 995–998.) The

---

[21] This extension provision is often denoted as the multiple *officer* exception. However, we use the language of the statute itself, which refers to multiple *employees*.

commission applied this extension, finding that either it or the multijurisdictional extension would be sufficient to apply a reasonably required 10-month extension of the one-year limitations period. It relied on four primary factors in support of this finding—the number of officers involved, the myriad investigations conducted, the seriousness of the charges, and the complexity of the case. The trial court also cited these factors in its order upholding the commission's determination that a 10-month extension of the limitations period was reasonably required.

On appeal, all four officers challenge the application of the multiple-employee investigation extension provision. They reason that the application of this provision in this matter stretched this extension beyond its proper limits. They also argue that the delay in serving them with disciplinary charges was unreasonable, such that those charges were filed beyond the one-year limitations period set out in section 3304. The language of the statute guides our determination of the proper scope of this extension.

First, there must be some connection between the multiple employees and the extension of the limitations period. The exception provides for an extension if the investigation involves more than one employee and requires an extension of the limitations period. (See § 3304(d)(4).) The Legislature's use of the term "requires" implies a nexus between the involvement of multiple employees in the investigation and the need for an extension of the limitations period.

Second, by characterizing this provision as an *extension* of the limitations period rather than a tolling of that period, the Legislature implied the addition of time after the normal limitations period rather than a break in the limitations period. Thus, the facts relied on by the commission should have some nexus to the period of the extension—that is, *after* the limitations period would otherwise expire. In this matter, the commission approved a 10-month extension from September 4, 2001—when it concluded that the one-year limitations period, properly tolled for periods during which a criminal investigation or a civil action was pending, otherwise expired—and July 1, 2002, when Breslin was served with disciplinary charges. (See pt. IV.C., *ante*.)

Considering the statutory language as a whole, we conclude that it requires that the evidence supporting the commission's decision establish that the city was actually and actively investigating multiple employees during the 10-month period from September 4, 2001, through July 1, 2002. Evidence of

circumstances arising outside that time period would be irrelevant to any finding that a 10-month extension of the limitations period was reasonably required in this matter on multiple-employee investigation grounds. On appeal, we cannot uphold a trial court finding based on evidence that is irrelevant to the issue before us. (*Jaramillo, supra*, 136 Cal.App.4th at p. 889.) To the extent that the commission and the trial court relied on facts arising outside the 10-month period at issue or facts unrelated to the involvement of multiple employees in the investigation, we must disregard them when determining whether substantial evidence supports the finding. (See *ibid.*)

Third, the statutory language also mandates that this extension of the limitations period be for a *reasonable*—not an unlimited—time period. (See § 3304(d)(4).) Thus, the facts relied on by the commission and the trial court must justify an extension of the limitations period that is reasonable under the circumstances. We examine those facts to determine whether substantial evidence supports the trial court's finding that the commission's 10-month extension was reasonable. (See pt. III.C., *ante*.)

### 2. *Moran, Siragusa and Zerga*

Even if we concluded that the commission's 10-month extension of the limitations period was reasonable, it would not render the disciplinary charges filed against Moran, Siragusa and Zerga timely. The time for filing charges against these three officers expired on February 11, 2000, more than a year and a half *before* the commission's 10-month extension began to run on September 4, 2001.[22] (See pt. IV.C.2., *ante*.) To allow a lengthy extension of the limitations period for bringing charges against Moran, Siragusa and Zerga on multiple-employee grounds during the time that the civil action was pending against Breslin would, in effect, circumvent the statutory requirement that the civil action tolling provision only applies to officers who are named defendants. (See § 3304(d)(6).) Using an extension provision to circumvent the Legislature's requirements for application of the civil action tolling provision would be unreasonable as a matter of law. (See, e.g., *Filarsky v. Superior Court* (2002) 28 Cal.4th 419, 423 [121 Cal.Rptr.2d 844, 49 P.3d 194] [abuse of discretion to permit agency to circumvent statute].)

We cannot justify a reasonable extension of the limitations period for bringing charges against Moran, Siragusa and Zerga for significantly more than 10 months on the basis of the multiple-employee investigation extension. As there is no other proper basis to extension or tolling beyond the tolling

---

[22] In fact, by the time that the OCC first sought to interview the four accused officers in March 2000, the one-year limitations period had *already expired* as to Moran, Siragusa and Zerga. (See pt. IV.C.2., *ante*.)

during the criminal investigation that we have already applied, there is no evidence on which to uphold the trial court's decision that the disciplinary charges were filed against these three officers in a timely manner. (See *Fukuda, supra*, 20 Cal.4th at p. 824.)

### 3. *Breslin*

This leaves us with the sole question of whether the disciplinary charges filed against Breslin himself were timely. Once the statute of limitations had run as to Moran, Siragusa and Zerga, the time for investigating their conduct had expired. (See pt. IV.C.2., *ante*.) Thus, by February 2000, Breslin was the only officer whose conduct properly remained before the OCC for investigation. In this circumstance, the rationale for applying the multiple-employee investigation extension to the limitations period for bringing charges against Breslin becomes illusory. We cannot rely on irrelevant evidence when we consider whether substantial evidence supports the trial court's finding that the charges were timely filed. (See, e.g., *Jaramillo, supra*, 136 Cal.App.4th at p. 889.) In these circumstances, we find no substantial evidence to support even a 10-month extension of the limitations period as reasonably required by the presence of multiple employees in the investigation. (See *Fukuda, supra*, 20 Cal.4th at p. 824.) As such, we conclude that the trial court necessarily erred in finding that the city filed timely disciplinary charges against Breslin.

## VI. CONCLUSION

 The limitations provision codified in section 3304(d) is intended to encourage the diligent investigation and charging of police officers alleged to have engaged in misconduct. The record before us does not support the implied finding of the commission and the trial court that the city was diligent in bringing charges against these four officers. The civil action tolling exception does not apply to the three officers who were not named defendants in the DeToy action. (See § 3304(d)(6).) The multijurisdictional and multiple-employee extensions do not apply on the facts of this matter. (See § 3304(d)(3), (4).) The time for bringing disciplinary charges against Moran, Siragusa and Zerga expired in February 2000, almost two and a half years before they were served with disciplinary charges in June and July 2002. The time for bringing charges against Breslin expired in September 2001, 10 months before he was served with disciplinary charges in July 2002. Having concluded that the city failed to timely file the disciplinary charges against each of the four officers, we necessarily find that the trial court erred in denying the officers' petition for mandate.

The order denying mandamus and injunctive relief is reversed. The matter is remanded to the trial court with instructions to enter an order granting the petition for writ of mandate. The November 2005 stay previously imposed shall remain in effect until our remittitur issues.

Sepulveda, J., and Rivera, J., concurred.

A petition for a rehearing was denied February 14, 2007.